[No. 31764. *En Banc.* June 25, 1951.]

The State of Washington *on the Relation of William A. Bugge, as Director of Highways, Plaintiff,* v. Tom Martin *et al., as the State Finance Committee, Respondents.*[1]

[1]Reported in 232 P. (2d) 833.

*The Attorney General* and *Lyle L. Iversen, Assistant,* for relator.

*Rudolph Naccarato,* for respondents.

*Bogle, Bogle & Gates* and *Harold A. Pebbles, amici curiae.*

GRADY, J.—The relator has invoked the original jurisdiction of this court pursuant to Const. Art. IV, § 4, requesting a writ of mandamus commanding the state finance committee, comprised of the governor, the state auditor, and the state treasurer, to issue and sell bonds authorized by chapter 121 of the Laws of 1951.

The respondents urge that the bonds should not be issued for the reason that the act authorizing their issuance is unconstitutional in that its title is defective because it does not adequately express the subject of the act and contains more than one subject; that the act undertakes to create a state indebtedness without complying with Const. Art. VIII, §§ 1, 2, and 3; that it provides for the payment and refund-

ing of obligations incurred subsequent to the effective date of amendment 18 of the constitution, and that the act was amended in such manner as to change its original scope and object, in violation of Const. Art. II, § 38.

When the 1951 legislature convened, its attention was called to the fact that money taken from the motor vehicle fund had been expended for the purchase of bonds issued by the Washington state toll bridge authority to finance the construction of the Agate pass bridge. The director of highways requested that he be authorized to reconstruct primary state highway No. 1 from Oregon to British Columbia, to construct four traffic lanes at Snoqualmie pass, a highway bridge across the Columbia river between Pasco and Kennewick, and county arterial highways and farm-to-market roads in Grant, Franklin, and Adams counties. The state finance committee had purchased the bridge bonds with moneys taken from the motor vehicle fund and deemed it advisable to reimburse that fund. The Agate pass bridge was being operated as a toll bridge. The director of highways desired to make the bridge a part of the state highway system and that it be made toll free. If this program, or any substantial part thereof, was to be carried out, a bond issue would be required. To meet the situation presented, chapter 121 was enacted. The title of the act is as follows:

"AN ACT relating to highways and roads; providing for the issuance, sale and retirement of motor vehicle revenue bonds in order to accelerate the reconstruction of primary state highway No. 1, construction of a four lane highway at Snoqualmie Pass, the construction of a Pasco-Kennewick bridge and the construction of Columbia Basin county arterial highways and farm to market roads in Grant, Franklin and Adams counties, as projects of the first priority; providing for the issuance of bonds to make the money expended from the motor vehicle fund for Agate Pass Bridge bonds of the Washington toll bridge authority available for war emergency or other high priority highway projects and making said bridge toll free; providing for reimbursement of all construction costs in said counties; regulating investments from the motor vehicle fund and amending section 47.60.100, R.C.W.; making an appropriation; and declaring an emergency."

The objections made by respondents to the title of the act are based upon Const. Art. II, § 19, which provides:

"No bill shall embrace more than one subject and that shall be expressed in the title."

Many enactments have been brought before this court involving the sufficiency of titles of acts passed by the legislature, and we have prescribed certain tests by which it may be determined whether there has been a violation of this provision of the constitution. In the recent case of *Gruen v. State Tax Commission,* 35 Wn. (2d) 1, 211 P. (2d) 651, we cited and reviewed many of our cases construing and applying the constitutional provision. We recognized that titles of acts may be general, and stated:

"A general title may be said to be one which is broad and comprehensive, and covers all legislation germane to the general subject stated. It is not an objection that it covers more than the subject of the body of the act, but it must not, in any event, cover less. It is not necessary that it index the details of the act, or give a synopsis of the means by which the object of the statute is to be accomplished. All matters which are germane to the subject may be embraced in one act. Under the true rule of construction, the scope of the general title should be held to embrace any provision of the act, directly or indirectly related to the subject expressed in the title and having a natural connection thereto, and not foreign thereto. Or, the rule may be stated as follows: Where the title of a legislative act expresses a general subject or purpose which is single, all matters which are naturally and reasonably connected with it, and all measures which will, or may, facilitate the accomplishment of the purpose so stated, are properly included in the act and are germane to its title."

■ The words, "An Act relating to highways and roads," constitute a general title. It would have been sufficient for legislation authorizing the reconstruction of primary state highways, highways with a prescribed number of lanes, the construction and acquirement of bridges to become a part of a highway; also arterial highways and farm-to-market roads anywhere in the state. Methods of financing are germane to such construction work. If funds, earmarked for

highways and roads, were found to have been used to purchase bonds issued to finance the construction of a bridge which connected two highways, issuance of bonds to make such money so expended available for highway projects would be a matter naturally and necessarily connected with highway construction; likewise, would be the reimbursement for highway construction costs incurred in any of the counties of the state. The motor vehicle fund being one allocated to highway construction and maintenance, regulation with reference thereto fall into the same category. Instead of relying on the general title, the framers of the act set forth in detail in the title matters which would reasonably be connected with highways and roads, and which would, or might, facilitate the accomplishment of the stated purposes.

▮ In preparing the body of the act, great care was used to avoid the inclusion of unrelated matters, and to make it consistent with the title. The title, in its general as well as its specific aspects, gives such notice as should reasonably lead to inquiry into the body of the act itself, and indicates to an inquiring mind its scope and purpose. Our early case of *Marston v. Humes,* 3 Wash. 267, 28 Pac. 520, and the late ones, *State ex rel. Washington Toll Bridge Authority v. Yelle,* 32 Wn. (2d) 13, 200 P. (2d) 467; *Randles v. State Liquor Control Board,* 33 Wn. (2d) 688, 206 P. (2d) 1209, 9 A. L. R. (2d) 531, and *Gruen v. State Tax Commission, supra,* set forth the purposes of the constitutional mandate and requirements necessary to its obedience.

The title of the act complies fully with the constitutional mandate, and meets all prescribed tests.

Const. Art. VIII, §§ 1, 2, and 3 place a debt limit upon the state, except to repel invasion, suppress insurrection, or to defend the state in war; otherwise, no debt shall be contracted by or on behalf of the state, unless authorized by law for some single work or object, which law must be approved by a majority vote at a general election. The indebtedness contemplated by the article is a general obligation of state. The debts provided for by the act are to be

evidenced by limited obligation bonds of the state, stating therein that they are not a general obligation of the state, but are payable from the proceeds of all state excise taxes on motor vehicle fuels. The motor vehicle fund is derived from an excise tax on motor vehicle fuels, license fees for motor vehicles, and all other state revenue intended to be used for highway purposes. Amendment 18 of the constitution provides that money derived from these sources shall be paid into the state treasury and placed in a special fund to be used exclusively for highway purposes.

In the case of *State ex rel. Troy v. Yelle,* 36 Wn. (2d) 192, 217 P. (2d) 337, we considered the question of what constitutes a "debt," within the meaning of Const. Art. VIII. We approved a definition made by the Oklahoma supreme court construing a similar constitutional provision that a state debt is such an obligation of the state as the legislature is required to provide for by levying an annual tax to pay the interest and establishing a sinking fund to liquidate the principal at maturity.

By the issuance of the bonds provided for in the act, the state incurs no such obligation. The bonds are payable only out of the motor vehicle fund, and that fund is protected from invasion for any use other than highway purposes. An indebtedness incurred for highway purposes, to be paid out of such a fund, is not a "debt" contemplated by Art. VIII. *Johnson v. McDonald,* 97 Colo. 324, 49 P. (2d) 1017; *State ex rel. Boynton v. Kansas State Highway Commission,* 138 Kan. 913, 28 P. (2d) 770; *State ex rel. Syvertson v. Jones,* 74 N. D. 465, 23 N. W. (2d) 54.

Respondents urge that the authority given by the act to issue bonds for reimbursement of the motor vehicle fund for money spent for Washington toll bridge authority bonds, purchased in connection with the construction of the Agate pass bridge, is in violation of amendment 18, in that the indebtedness evidenced thereby does not fall within any of the inclusions enumerated in setting forth how the term "highway purposes" shall be construed. Amendment 18 was designed to insure that the motor vehicle fund would be

used exclusively for highway purposes. In order to remove any doubt as to whether the words "highway purposes" would be regarded as broad enough to cover the various items and objectives which the framers of the amendment desired to include therein, the amendment, after providing the fund was to be used exclusively for highway purposes, then provided that "such highway purposes shall be construed to include the following: . . ." Subdivisions (a) to (e) set forth what may be deemed an expansion of that which might otherwise be considered as being embraced within the term "highway purposes," when such words are given their ordinary meaning.

The content of the subdivisions does not limit the scope of the term "highway purposes," but enlarges and extends it. Inasmuch as the Agate pass bridge is being acquired to become a part of the state highway system, and money from the motor vehicle fund has been invested in bonds issued to provide funds for the construction of the bridge, bonds issued pursuant to the act are for highway purposes, and their issuance and sale does not offend amendment 18.

The final contention made by respondents is that the act violates Const. Art. II, § 38, which provides:

"No amendment to any bill shall be allowed which shall change the scope and object of the bill."

We are informed that engrossed Senate bill No. 156, which related to highways and roads, the motor vehicle fund, and the Agate pass bridge, legislated on the subject of retirement of the bridge bonds, but, when the bill reached the House of Representatives, it was amended by striking the title and everything after the enacting clause, and made to read as in the act before us. This information comes to us in the form of an affidavit.

We cannot consider the objection made, as it involves legislative history. We may resort to such history to ascertain legislative intent when a statute is ambiguous or its meaning doubtful or obscure, but we will not go behind an enrolled enactment to determine the method, the procedure, the means or the manner by which it was passed in the

houses of the legislature. *State ex rel. Reed v. Jones,* 6 Wash. 452, 34 Pac. 201; *State ex rel. Dunbar v. State Board of Equalization,* 140 Wash. 433, 249 Pac. 996; *Morrow v. Henneford,* 182 Wash. 625, 47 P. (2d) 1016; *Shelton Hotel Co. v. Bates,* 4 Wn. (2d) 498, 104 P. (2d) 478.

We conclude the act conforms to the provisions of the constitution which respondents urge have been violated, and that the bonds authorized thereby should be issued and sold in accordance therewith.

SCHWELLENBACH, C. J., BEALS, MALLERY, HILL, HAMLEY, FINLEY, and WEAVER, JJ., concur.

DONWORTH, J. (concurring)—While I concur in the majority opinion in holding that the title of chapter 121 of the Laws of 1951 is sufficient under Const. Art. II, § 19, and in holding that there was here no violation of Const. Art. II, § 38, I desire to briefly state my reasons for concurring with the holding that no state indebtedness was created in violation of Const. Art. VIII, §§ 1, 2, and 3.

In November, 1944, the people of this state adopted the eighteenth amendment to their constitution, which provides as follows:

"ART. II, § 40. RESTRICTION OF MOTOR VEHICLE LICENSE FEES AND EXCISE TAXES ON MOTOR FUELS TO HIGHWAY PURPOSES.—All fees collected by the State of Washington as license fees for motor vehicles and all excise taxes collected by the State of Washington on the sale, distribution or use of motor vehicle fuel and all other state revenue intended to be used for highway purposes, shall be paid into the state treasury and placed in a special fund to be used exclusively for highway purposes, such highway purposes shall be construed to include the following:

"(a) The necessary operating, engineering and legal expenses connected with the administration of public highways, county road and city streets;

"(b) The construction, reconstruction, maintenance, repair and betterment of public highways, county roads, bridges and city streets: including the cost and expense of (1) acquisition of rights-of-way, (2) installing, maintaining and operating traffic signs and signal lights, (3) policing by the State of public highways, (4) operation of movable span

bridges, and (5) operation of ferries which are a part of any public highway, county road, or city street;

"(c) The payment or refunding of any obligation of the State of Washington, or any political subdivision thereof, for which any of the revenues described in section 1 may have been legally pledged prior to the effective date of this act;

"(d) Refunds authorized by law for taxes paid on motor vehicle fuels;

"(e) The cost of collection of any revenue described in this section;

"*Provided,* That this section shall not be construed to include revenue from general or special taxes or excises not levied primarily for highway purposes, or apply to vehicle operator's license fees or any excise tax imposed on motor vehicles or the use thereof in lieu of a property tax thereon, or fees for certificates of ownership of motor vehicles."

By this provision the people directed that all license fees for motor vehicles and all excise taxes collected by the state on the sale, distribution and use of motor vehicle fuel and other state revenue intended to be used for highway purposes should be placed in a special fund in the state treasury and used exclusively for highway purposes as defined in the amendment.

The bonds authorized by chapter 121 of the Laws of 1951 are payable solely from the proceeds of all state excise taxes on motor vehicle fuels (principally the so-called gasoline tax) which, by the eighteenth amendment, have been earmarked for highway purposes. The use of the tax proceeds here involved being limited to highway purposes, the situation is entirely different from that with which we were confronted in *Gruen v. State Tax Commission,* 35 Wn. (2d) 1, 211 P. (2d) 651 (see dissenting opinions), where the proceeds of excise taxes on the sale of cigarettes which had been available for the general fund were pledged to secure the bonus bonds.

In 1935, a similar question arose in Colorado whose constitution contains substantially similar restrictions against the incurring of state indebtedness. The Colorado constitution had recently been amended to include a provision requiring that the proceeds of gasoline taxes and license

fees with respect to the operation of motor vehicles be segregated and used exclusively for highway purposes. The state of Colorado proposed to issue revenue anticipation warrants payable solely out of revenues received from the taxes and license fees above described. It was proposed to sell these warrants to the Federal government and use the proceeds to carry out an extensive program of highway improvement. The Colorado supreme court in *Johnson v. McDonald*, 97 Colo. 324, 49 P. (2d) 1017, held that these warrants did not create a state indebtedness in violation of the applicable provision of the state constitution.

My view that no unconstitutional indebtedness is authorized by chapter 121 of the Laws of 1951 is based upon the reasoning in the concurring opinion of Chief Justice Butler in the Colorado case above cited which is as follows:

"The decision seems to me to be right.

"The vigorous dissenting opinion of my brother Hilliard does not shake my faith in the conclusion that the statute assailed does not provide for the contracting of a debt within the inhibition of section 3 of article II of the state Constitution. The case, I submit, comes within the Special Fund doctrine repeatedly announced by this court in the cases cited in the principal opinion. The situation is this: An extensive public highway program is to be carried out. New highways are to be constructed throughout the state. Existing highways are to be improved. It is work that must be done sometime. The General Assembly, the exclusive judge of matters of public policy, has concluded that it is wise to have all this done during the present depression, while thousands of men are unable to find private employment, rather than to have the work distributed over a period of many years. To do the work will involve the expenditure of millions of dollars. That money is not now on hand. The federal government is to advance the money necessary to make these public improvements, and is to receive revenue anticipation warrants payable solely out of what in effect are license fees to be paid by those who use the public highways of the state for motor vehicle traffic. The 1934 amendment of article 10 of the Constitution segregates for exclusive use upon the public highways of the state all the proceeds derived from the imposition of licenses, registration fees and other charges with respect to the operation of motor vehicles upon the public highways

of the state and the proceeds derived from the excise on gasoline. Such are the revenues out of which the advances are to be repaid to the federal government. The warrants to be given are revenue anticipation warrants and do not create a debt in the constitutional sense. Those revenues are derived, not from general taxation, but from impositions which, though not tolls in the strict legal sense, bear some resemblance thereto, because, in effect, they are charges for the privilege of using the highways. It is clear, under all the authorities, that if a state obtains an advance of money to construct a road or bridge, to be repaid exclusively out of the tolls received, it would not offend against the constitutional provision inhibiting the contracting of a debt; and the same principle applies here. Where revenue anticipation bonds or warrants are to be paid *exclusively* out of rents from dormitories, or charges collected from the users of electricity, gas, water, bridges *or roads*, such bonds or warrants do not create a debt within the inhibition of the state Constitution.

"We need not be alarmed by the suggestion that highways do not endure for thirty years, and that from some other source must come the money to rebuild and repair the highways. The 1934 Amendment, supra, provides that the proceeds derived from the imposition of motor vehicle licenses, and from excise on gasoline, etc., shall, except costs of administration, be used exclusively, not only for the construction of public highways, but also for their *maintenance*."

It is my opinion that the provisions of chapter 121 of the Laws of 1951 do not authorize the creation of a state indebtedness in violation of Const. Art. VIII because the limited obligation bonds authorized therein are payable solely from revenues derived from license fees and excise taxes collected in connection with the operation of motor vehicles on the public highways of this state. Furthermore, such revenues, under the eighteenth amendment, may be used only for highway purposes as therein defined. Chapter 121 provides that the proceeds to be derived from the sale of these bonds shall be used only for highway purposes.

The revenues involved in this case are essentially charges for the use of the highways and, in principle, do not differ from tolls charged for the use of highway bridges. No one who does not use the highways for motor vehicle transpor-

tation is compelled to contribute toward their construction or maintenance.

I find nothing in our state constitution which prohibits the pledging of the revenues described in this act to the payment of these limited obligation bonds or which prohibits their issuance in the manner provided therein.

Being of the opinion that, for the reasons stated, no unconstitutional state indebtedness will be created by the issuance of the proposed limited obligation bonds, I concur in the majority opinion.

HILL and WEAVER, JJ. (concurring)—We have signed the majority opinion, but we are also in accord with what Judge Donworth has said in his concurring opinion, it being not in conflict with, but an amplification of, the reasoning of the majority in reaching its conclusion that no state debt was created.

