459 P.2d 509

**ARIZONA STATE HIGHWAY COM-
MISSION, Petitioner,**

v.

**Gary K. NELSON, Attorney General of the
State of Arizona, and Theodore Hawkins,
Commissioner of Finance of the State of
Arizona, Respondents.**

**No. 9650.**

Supreme Court of Arizona.

In Banc.

Oct. 8, 1969.

John T. Amey, Phoenix, for petitioner.

Gary K. Nelson, Atty. Gen., for respondents.

HAYS, Justice.

The Arizona Highway Commission, petitioner, has invoked the original jurisdiction of this court by filng a petition for a writ of mandamus seeking to compel the Attorney General and the Commissioner of Finance, respondents, to execute their approval of a $2,000,000 issuance of Arizona Highway Commission Right of Way Bonds. Respondents have refused to approve the bonds.

In 1968, the state legislature adopted legislation (A.R.S. Title 18, Chapter 6, Article 1, §§ 18–601 to 18–612) authorizing the Arizona Highway Commission to issue bonds for the purpose of financing the acquisition of real property for future highway needs. The enactment provides that the bonds are to be secured by a first lien on all or part of the monies paid into the State Highway Fund from various motor vehicle licenses and fees and the Highway Commission's share of the motor vehicle fuel tax.[1]

1. For provisions relating to the State Highway Fund, see A.R.S. Title 18, Chapter 1, Article 2, §§ 18–131 to 18–140.

Pursuant to this statutory authorization, the Highway Commission, on March 24, 1969, adopted a resolution authorizing the issuance and sale of $2,000,000 of "Arizona State Highway Commission Right of Way Bonds" and irrevocably pledging as security for repayment of the bonds the monies paid into the State Highway Fund from the sources enumerated in Article 9, § 14 of the Arizona Constitution, A.R.S. The bond form accompanying the Commission's resolution cites: "The principal of and interest on this bond are payable solely from the revenues above recited and no holder hereof shall have the right to compel any exercise of any other taxing power of the State of Arizona to pay this bond or the interest hereon. *This bond· is not a debt of the State of Arizona or the State Highway Department within the meaning of any constitutional or statutory limitation.*" (Emphasis supplied.)

The bond form also provides: "The Arizona State Highway Commission as agent for the State of Arizona does hereby pledge to the holder of this bond *that the State of Arizona will not limit or alter the rights vested in the State Highway Commission of the State of Arizona to collect such fees, excises and taxes as may be necessary* to produce sufficient revenue to meet the expense of the state highway system and fulfill the terms of the Resolution providing for the issuance of this bond *or to in any way impair the rights and remedies of the holders of these bonds.*" Before sale of the bonds can take place, the bond form, by its own terms, requires approval by the Attorney General and the State Commissioner of Finance.

The bonds were presented to the respondents for their certification, but both officers refused to sign the bonds. In answer to the Highway Commission's petition for writ of mandamus, respondents urge three objections which they allege prevent their approval: (1) That the bonds violate the constitutional debt limitation of Article 9, § 5 of the Arizona Constitution; (2) that the bond issue violates Article 7, § 13 of the Arizona Constitution in that it was not approved by a statewide referendum; and (3) that the Commissioner of Finance is not required to give prior approval to the bond issue, but that the Commissioner must approve, at the time the bonds are surrendered at maturity, all payments out of the state treasury to the bondholders.

We hold that the Highway Right of Way Bond Issue is in conformity with both the constitution and laws of the State of Arizona. Further, we find no requirement that the bonds receive the approval of the Commissioner of Finance either prior to their issuance or at the time the matured bonds are redeemed. A writ of mandamus will issue to the Attorney General to compel his written approval of the bonds.

## I. DOES THE HIGHWAY RIGHT OF WAY BOND ISSUE VIOLATE THE ARIZONA CONSTITUTIONAL DEBT LIMITATION?

■ Article 9, § 5 of the Arizona Constitution permits the state to "contract debts to supply the casual deficits or failures in revenues, or to meet expenses not otherwise provided for," but limits such indebtedness to a maximum aggregate amount at any one time of $350,000. Under the provision, the state has unlimited borrowing authority only "to repel invasion, suppress insurrection, or defend the State in time of war." Respondents argue that the Highway Right of Way Bonds constitute a general obligation of the state, and hence are violative of the constitutional debt limitation.

This Court has previously held that the constitutional debt limitation does not apply to revenue bonds payable solely from revenues generated by proprietory projects. Board of Regents of University of Arizona v. Sullivan, 45 Ariz. 245, 42 P.2d 619 (1935). At issue in Sullivan was whether the University of Arizona could pledge various university fees and charges to the repayment of construction bonds and of loans from various federal agencies. We held that the bonds did not violate the constitutional debt limitation because they were

"not payable from taxes, but solely from the revenues of the University." The Act authorizing such indebtness had provided that the state would in no way be held liable for payment, which immunized the bonds from the limitations of Article 9, § 5.

Article 9 of our Constitution relates to "Public Debt, Revenue and Taxation." Section 5 sets forth the debt limitation. Article 9 was amended in 1952 by a vote of the people, in which § 14 was added as follows:

"No moneys derived from fees, excises, or license taxes relating to registration, operation, or use of vehicles on the public highways, or to fuels used for the propulsion of such vehicles, shall be expended for other than cost of administering such laws, statutory refunds and adjustments provided therein, payment of highway obligations, cost of construction, reconstruction, maintenance and repair of public highways and bridges, county, city and town roads and streets, and for distribution to counties, incorporated cities and towns in an amount not less than as provided by law on July 1, 1952, to be used by them only for the purposes permitted by law on that date, expense of state enforcement of traffic laws, and payment of costs for publication and distribution of Arizona Highway Magazine, provided, however, that this section shall not apply to moneys derived from the automobile license tax imposed under section 11 of Article IX of the Constitution of Arizona." Arizona Constitution, Article 9, § 14.

It is the monies contributed to this fund, monies which cannot be expended for any other purpose than that set forth in Article 9, § 14, which are pledged as security for the Highway Right of Way Bonds in question. One of the purposes set forth in this amendment is "payment of highway obligations." The bonds to be issued here will be "highway obligations."

This court has held that highway fund revenues received by a city as its share of the state motor vehicle and gasoline tax receipts may be pledged as security for the issuance of highway improvement bonds by the city. Switzer v. City of Phoenix, 86 Ariz. 121, 341 P.2d 427 (1959). In Switzer, a city ordinance authorized the issuance of $2,500,000 of such bonds. In holding that such an obligation did not violate the constitutional provision limiting the indebtedness of counties, cities, towns, school districts or other municipalities (Arizona Constitution, Article 9, § 8), we discussed the application of the "special fund" doctrine and stated, "(w)e will follow the weight of authority at least to the extent where, as here, the fund from which the obligations are to be paid is created by voluntary contributions of the state to the city." The only material difference between Switzer and our present case is that Switzer involved the local goverment debt limitation rather than the state debt restrictions of constitution Article 9, § 5. We think that the Switzer rationale is solid authority for the conclusions which we reach today.

Several other jurisdictions have held that highway construction and right of way bonds secured by pledged motor vehicle and license taxes contributed to a special highway fund, under constitutional authority, are not obligations subject to the various states' constitutional debt limitations. State ex rel. State Road Commission v. O'Brien, 140 W.Va. 114, 82 S.E.2d 903 (1954); State ex rel. Bugge v. Martin, 38 Wash.2d 834, 232 P.2d 833 (1951); Johnson v. McDonald, 97 Colo. 324, 49 P.2d 1017 (1935); State ex rel. Boynton v. Kansas State Highway Commission, 138 Kan. 913, 28 P.2d 770 (1934).

Respondents, in criticizing the "special fund" method of deficit financing, cite the overwhelming rejection in 1965 by the Arizona electorate of a proposed constitutional amendment authorizing the state to incur general indebtedness of $100,000,000 as evidence that the public policy of this state is opposed to any form of substantial public debt. However, it is important to emphasize that it was the voters themselves who created the State

Highway Fund in 1952, irrevocably earmarking certain motor vehicle taxes and fees for highway uses only and specifically providing for their expenditure for "highway obligations." The State Highway Fund is not available for general state appropriations. Since the state legislature has authorized the Highway Commission to pledge *only* the revenues of the State Highway Fund as security, the Highway Right of Way Bonds are not debts within the meaning of the constitutional debt limitation. The gasoline and license taxes constitute a fund which may be reasonably expected to meet the matured obligations. But even in the doubtful event that the revenues of the State Highway Fund prove insufficient, the general revenues of the state may not be used to retire such bonds. ·

■ The Washington Supreme Court, in State ex rel. Washington State Finance Committee v. Martin, 62 Wash.2d 645, 384 P.2d 833 (1963), thoroughly examined the extent to which the "special fund" doctrine has reasonable applicability:

."That the special fund doctrine is a useful and valid tool of government is apparent when one thinks of all of the institutions and devices of government supported by it. But the true test of its application here is not what comes out of the fund, but what goes into it. If the revenues in it derive exclusively from the operation of the device or organ of government financed by the fund, as in the case of a toll bridge, or the operation of the State Liquor Control Board, or from sales or leases of publicly owned lands, any securities issued solely upon the credit of the fund are not debts of the state, but debts of the fund only. But if the state undertakes or agrees to provide any part of the fund from any general tax, be it excise or ad valorem, then securities issued upon the credit of the fund are likewise issued upon the credit of the state and are in truth debts of the state. Hence, we must take care that the employment of peripheral doctrines do not lead us away from the main point of the case. What is a debt of the State of Washington? Any obligation which must in law be paid from any taxes levied generally is, we think, a debt of the state. It matters little whether the tax be ad valorem or an excise.

Our views in this re-examination of the special fund doctrine, as it applies to Article 8, §§ 1 and 3 of the state constitution on the question of debt limitation, are, we think, confirmed by the subsequent motor vehicle fuel tax amendment. In 1944, the people of this state adopted amendment 18 to the state constitution which provides that all revenues derived from excise taxes on motor vehicle fuels, license fees, and other revenues for highway purposes, be kept in a special fund and used for highway purposes only. Bonds issued against this fund were correctly held not violative of Article 8, §§ 1 and 3, in State ex rel. Bugge v. Martin, 38 Wash.2d 834, 232 P.2d 833 (1951), where it was pointed out in a concurring opinion that the very restriction of the fund to the revenues from specifically authorized constitutional sources saved the bonds from any doubts * * *." 384 P.2d at 842–843.

We agree with the Washington court that where the bonds are payable only from a constitutionally authorized fund, which is separate and distinct from the State's general revenues, the bonds thus funded are obligations of the special fund and not of the state.

The Attorney General posed the following question: "Does the pledge of revenues constitute a contract by the state and not the Highway Department to collect all revenues pledged during the life of the bonds or is this a voluntary contribution made by the state to the Highway Department and pledged for the payment of the bonds solely at the pleasure of the legislature?" We think that the monies collected for the State Highway Fund are collected as permitted by the amendment to the Con-

stitution and may be used for the purposes set forth therein, including the payment of bonds.

When the Highway Right of Way Bonds are issued, a contract is created between the bondholders and the Highway Commission. It is a well established principle of Constitutional Law that bondholders are protected against subsequent legislation that will impair the contractual obligation evidenced by the bond. Von Hoffman v. City of Quincy, 4 Wall. 535, 71 U. S. 535, 18 L.Ed. 403 (1867); McGahey v. Virginia, 135 U.S. 662, 10 S.Ct. 972, 34 L. Ed. 304 (1890); W. B. Worthen Co. ex rel. Board of Commissioners of Street Improvement District No. 513 v. Kavanaugh, 295 U.S. 56, 55 S.Ct. 555, 79 L.Ed. 1298 (1935). In City of Quincy, the defendant city had issued bonds in order to purchase railroad stock. An Illinois Act provided for a special tax to pay the interest on the bonds. Subsequent legislation limited the city's taxing power, the effect being that the city could no longer pay the interest. The Supreme Court held that the subsequent Act was invalid under Article I, § 10 of the U. S. Constitution as a law impairing the obligation of contract.

In our present case, the pledge of monies from the State Highway Fund is expressly irrevocable, and any subsequent statute or constitutional amendment impairing the security rights of the bondholders would be invalid insofar as it affects the bonds already issued. But the prohibition of impairment of the obligation of contracts does not prevent the legislature from lowering the state's motor vehicle excise taxes to the extent that the security of the bondholders is not impaired. This principle was clearly established in Switzer v. City of Phoenix, supra.

The Commission resolution, by committing the legislature to future taxation and contributions to the State Highway Fund, does not violate state constitution Article 9, § 1, which states: "The power of taxation shall never be surrendered, suspended, or contracted away." As Justice Struck-

meyer made clear in Switzer, supra, that constitutional provision was intended to restrict the legislature from granting irrepealable immunity from taxation to private persons. "It was not intended to prohibit the levying of a tax. * * * (T)he first sentence of Article IX, § 1 is a prohibition against the surrender or relinquishment of the right to impose a tax. In the instant case, 'it is crystal clear' that the legislature is not contracting away the right to impose a tax. The legislature has imposed a tax and has simply applied the proceeds of the tax to a particular purpose."

The legislature retains full power to increase or decrease the rate of taxes earmarked for the State Highway Fund. However, existing taxes earmarked for the State Highway Fund cannot be decreased to such an extent that the bondholders' security is impaired, but subject to that exception, the legislature retains full control over the tax laws of this state. See Ziegler v. Witherspoon, 331 Mich. 337, 49 N.W.2d 318 (1951).

II. MUST THE HIGHWAY RIGHT OF WAY BOND ISSUE BE APPROVED BY A VOTE OF THE QUALIFIED VOTERS OF ARIZONA?

Article 7, § 13 of the Arizona Constitution requires: "Questions upon bond issues or special assessments shall be submitted to the vote of real property taxpayers, who shall also in all respects be qualified electors of this State, and of the political subdivisions thereof affected by such question." Respondents argue that this provision requires that in order for the Highway Right of Way Bonds to be valid they must be approved by a statewide referendum.

Other jurisdictions have held that revenue bonds and special fund obligations are not subject to constitutional requirements of approval by a vote of the qualified electors of the state. See Holmes v. Cheney, 234 Ark. 503, 352 S.W.2d 943 (1962); Meagher v. Commonwealth ex rel. Unemployment Compensation Commission, 305

Ky. 289, 203 S.W.2d 35 (1947); State **v.** Florida State Imp. Commission, 71 So.2d 146, (Fla.1954); Nichols v. Williams, 338 Mich. 617, 62 N.W.2d 103 (1954); People v. Ill. State Toll Highway Comm., 3 Ill.2d 218, 120 N.E.2d 35 (1954).

Our court has long adhered to this doctrine, having first asserted it in City of Globe v. Willis, 16 Ariz. 378, 146 P. 544 (1915). The Sewer Act of 1913 provided that real property benefitted by an improvement should be liable for its cost, and created a special fund to be used only in paying for the improvement. Additionally, the Act provided for the issuance of bonds for assessments payable out of such a fund and expressly exempted the city from liability for the bonds. We held that the city was not "affected" by the assessment so as to require submission of the proposed bonds to a referendum vote. Referring to Article 7, § 13, we stated:

"Bonds issued by a municipality as evidence of its obligations are included within the terms of this provision, as also special assessments for the payment of which it becomes liable, for in both cases the municipality, as such, is 'affected by such question.' But a municipality is not 'affected' by a bond issue or a special assessment when it in no way incurs liability for their payment, even though it be constituted under the law the agency by and through which the bonds are issued or the special assessment is made. 'Questions upon bond issues or special assessment'—that is, questions affecting the primary liability of the municipality— must be submitted to the property taxpayers therein, otherwise qualified as electors. Bond issues and special assessments that do not become a direct charge against the municipality, and do not increase its indebtedness, cannot be said to 'affect' it, and are not under this provision of the Constitution to be submitted to a vote as therein prescribed." 16 Ariz. at 382, 146 P. at 545.

The doctrine of the Willis case was subsequently upheld in Ainsworth v. Arizona Asphalt Paving Co., 18 Ariz. 242, 158 P. 428 (1916). We think the Willis doctrine applies to special fund deficit financing on the state level, and hold that the Highway Right of Way Bonds in question do not require approval by the Arizona electorate.

III. MUST THE COMMISSIONER OF FINANCE APPROVE THE HIGHWAY RIGHT OF WAY BONDS, EITHER PRIOR TO THEIR ISSUANCE AND SALE OR AT THE TIME THE MATURED BONDS ARE SURRENDERED FOR REPAYMENT? .

Nowhere in the State Highway Bonding Authorization (A.R.S. Title 18, Chapter 6, Article 1) is there a provision requiring the approval of the Commissioner of Finance prior to the issuance of the Highway Right of Way Bonds. In our search of these and other statutes relating to the powers and duties of the Commissioner of Finance, we find no requirement, either express or implied, that the Commissioner must approve, prior to their issuance, bonds of any state agency or subdivision.

Respondents argue that A.R.S. § 35–131.-31, dealing with approval by the Commissioner of claims against the state, and §§ 18–138 and 18–140, pertaining to the Commissioner's approval of warrants paid out of the State Highway Fund, require that no monies can be paid out of the State Highway Fund to retire the Highway Right of Way Bonds at maturity without the approval, at that time, of the Commissioner of Finance. We find, on the other hand, that the State Highway Bonding Authorization permits a different procedure with respect to the approval and payment of the Highway Right of Way Bonds, and hold that the Commissioner of Finance is not required to approve payments made out of the State Highway Fund to redeem the Highway Right of Way Bonds at maturity.

The State Highway Bonding Authorization provides for a unique new form of deficit financing, and the legislature has expressly allowed a special procedure for

the undertaking of such obligations, recognizing that the normal procedure provided by law would materially affect the marketability of the bonds. Section 18–612 provides:

"* * * this article shall * * * be deemed full authority for the acquisition of real property for future highway needs under this article, for entering into contracts in connection therewith, and for the authorization, issuance and sale of the bonds pursuant to this article and *without regard to the procedure required by any other such law.* * * * it (is) the intent of the legislature that this article shall constitute the exclusive law on such matters." (Emphasis added.)

By looking to the article as the "exclusive" law on the bonding authorization, it is clear that the legislature intended that the Attorney General is the *only* state officer required to certify the bonds.

■ By the terms of § 18–606, subsec. E, the provisions of A.R.S. §§ 18–138 and 18–140 specifically do not apply to the pledging of revenues of the State Highway Fund for the purpose of securing the Highway Right of Way Bonds. Rather, the bonds "shall be paid in the manner prescribed in the resolution issuing the bonds." The bond resolution clearly makes the Right of Way Bonds and coupons payable upon "surrender" to the State Treasurer or to particular authorized banks. Respondents argue that § 18–606, subsec. E applies only to "parity" bonds, since the subsection appears in a section entitled "Authority to issue parity bonds." However, we think that the subsection applies to Highway Right of Way Bonds generally, and would make no sense if its import was limited solely to the issuance of "parity" bonds.

This interpretation is further underscored by the language of § 18–603, subsec. A, par. 2 which states:

"* * * regardless of whether or not the bonds are of such form or character as to be negotiable instruments under the terms of the negotiable instruments law, the bonds shall be and are hereby made fully negotiable within the meaning of and for all purposes of the negotiable instruments law."

Under the negotiable instruments law, an instrument is negotiable only if it is an unconditional written promise to pay a sum certain on demand or at a definite time. A.R.S. § 44–2504. A requirement that the Commissioner of Finance approve payment of the bonds upon surrender and redemption would have the effect of adding a condition subsequent to the bond contract. This would clearly affect the "negotiability" of the Right of Way Bonds, and militate against the legislature's intent that the bonds be "fully negotiable."

■ Respondents point out that A.R.S. § 35–185, subsec. D requires that "No money shall be withdrawn from the (state) treasury for any purpose unless for payment of warrants issued by the Commissioner of Finance or for the payment of treasurer's warrant notes." This is a general enactment, relating to payments generally made out of the state treasury. But the state legislature clearly has the authority to make such exceptions to this general rule as it sees fit, and the procedure permitted by the State Highway Bonding Authorization is such an exception. Under familiar principles of statutory construction, statutes relating to the same subject matter should be read together and harmonized where possible. Desert Waters, Inc. v. Superior Court, 91 Ariz. 163, 370 P. 2d 652 (1962). Reading § 35–185, subsec. D together with the provisions of the State Highway Bonding Authorization, it is evident that the legislature intended to carve out an exception to the general requirement of approval by the Commissioner of Finance.

■ The bond resolution purportedly makes the signature of the Commissioner of Finance a requisite for certification of the Highway Right of Way Bonds. As expressed above, such prior approval by the Commissioner is not necessary, and does not affect the validity of the bond issue. Only the signature of the Attorney General

is necessary to certify the validity of the bonds. We need not compel the Commissioner of Finance to execute his approval, and his failure to do so will in no way affect the validity of the bonds or impair the security of the bondholders. The Commissioner's signature is a matter of form only.

Accordingly, a writ of mandamus will hereby issue to the Attorney General to require him to certify, on the back of each of the bonds, that each "is issued in accordance with the constitution and laws of the state of Arizona," as is required by A.R.S. § 18–609.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and McFARLAND, JJ., concur.