587 P.2d 255

William R. CUMMINGS and Rush Hughes, Appellants and Cross-Appellees,

v.

AVIATION SPECIALTIES TRADE CORPORATION, Appellee and Cross-Appellant.

No. 1 CA–CIV 3721.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 19, 1978.

Rehearing Denied Oct. 16, 1978.

Review Denied Nov. 14, 1978.

George M. Sterling, Jr., Phoenix, for appellants.

Lewis & Roca by Paul G. Ulrich, Richard S. Cohen, Phoenix, for appellee.

OPINION

HAIRE, Presiding Judge.

Appellants, Cummings and Hughes, have appealed from the trial court's refusal to award them treble damages and attorney's fees in a judgment which they obtained against their former employer. This judgment was for additional compensation claimed due upon the completion of their contract with that employer. The employer, appellee Aviation Specialties Trade Corporation, has cross-appealed from the same judgment, contending that the trial judge erred in awarding any additional compensation to the appellants.

Considering first the question raised in the appeal, A.R.S. § 23–355 provides as follows:

"§ 23–355. Action by employee to recover wages; amount of recovery

If an employer, in violation of the provisions of this chapter, shall fail to pay wages due any employee, such employee may recover in a civil action against an employer or former employer an amount which is treble the amount of the unpaid wages, together with costs and reasonable attorneys' fees to be allowed by the court on the basis of time and effort expended by counsel in behalf of the plaintiff-employee."

Appellants contend that under this statute, the trial judge has no discretion to deny treble damages and attorney's fees once he has determined, as in this case, that the employer has failed to pay the employee all sums due upon completion of the employment contract. In response, the appellee-employer seeks to uphold the trial court's refusal to award treble damages and attorney's fees, contending that the penal provisions of § 23–355 are inapplicable when the trial judge determines that the employer has acted reasonably and in good faith in tendering the compensation it believed to be due.

██ At the time the parties' briefs were filed and oral argument was held in this appeal, no Arizona appellate court had spoken on this issue. Thereafter, on May 16, 1978, Department B of this Court issued its opinion in *Apache East, Inc. v. Wiegand,* 119 Ariz. 308, 580 P.2d 769, holding that the treble damages penalty provided by § 23–355 should not be awarded when there is a reasonable, good faith wage dispute between the employer and the employee. For the reasons stated in that opinion, we hold that the trial judge did not err in denying treble damages and attorney's fees to appellants in this case. We are aware that the strict holding in *Apache East* involved only the question of treble damages, and did not include a consideration of the attorney's fees aspect of the statute. However, appellants here have not urged, and there is nothing in the wording of the statute which would justify, a treatment of the awarding of attorney's fees on a basis different from that accorded to the treble damages issue.[1] We therefore hold that the trial judge did not err in holding that the treble damages and attorney's fees provisions of § 23–355 do not apply to situations in which the employer acts both reasonably and in good faith in a dispute relating to the determination of the amount of compensation due to an employee. We have reviewed the record and note that the evidence fully supports the trial court's finding as to the reasonableness and good faith of the employer in this litigation.

We turn now to the employer's cross-appeal. As we have previously stated, the employer contends that the trial judge erred in awarding the appellants any additional compensation.[2] This contention involves the proper interpretation of written contracts between the parties, wherein the appellants were employed as flight crew members in connection with an undertaking by the employer to spray large acreages of spruce budworm infested forest lands in the Province of Quebec.[3] It was contemplated that the services required would be rendered within a maximum period of two months. Under the terms of the written contracts, the employer agreed to compensate appellants based upon the gallonage of insecticide which they sprayed. Also, there was a provision for the payment of a guaranteed minimum per month or prorated portion thereof. The parties' dispute as to the interpretation of their contract stems from a disagreement as to the interrelationship of these two compensation provisions.

1. A.R.S. § 12–341.01, authorizing the awarding of attorney's fees to the successful party in all contract litigation, was enacted subsequent to the trial court litigation here involved.

2. That portion of the trial court's judgment which awarded appellant Cummings additional compensation for his work as a mechanic is not questioned by the employer in its cross-appeal.

3. Individual contracts were entered into with each appellant, differing only as to rate of compensation to be paid. Insofar as concerns the issues involved in this cross-appeal, we will treat the individual contracts as identical, since there is no controversy as to the amounts due, once the issue as to the proper interpretation of the contract is resolved.

The pertinent provisions of the contract are found in Article II A thereof:

## "ARTICLE II

### EMPLOYER RESPONSIBILITY

A. As compensation for his services performed in behalf of the Employer, Employer agrees to reimburse the Crew Member as follows:

1. $.0367 cents per gallon sprayed.
2. $75.00 enroute expenses from Mesa, Arizona to the contract base site.
3. $75.00 enroute expenses from the contract base site to Mesa, Arizona upon completion of the contract.
4. The Employer will pay to the Crew Member a minimum guarantee of $2500.00 per month or a pro-rated portion thereof commencing and terminating on the dates specified under Article 1, Section A."

Some factual background as to the specific nature of the parties' dispute is pertinent at this point. The spraying operation for 1974 (the year in question) involved the months of May and June. Because of poor weather and the fact that the budworm had not matured as early as expected, the spraying which occurred in May was minimal, and therefore compensation based upon the gallonage compensation provision of subparagraph A-1 of Article II would have been substantially less than the minimum guarantee for that month as specified in subparagraph A-4. The employees were paid the minimum monthly guarantee for May in semi-monthly installments during that month. By far the greater portion of the spraying occurred in June, and compensation based upon spray gallonage for that month would have far exceeded the guaranteed minimum for that month. After completion of the job shortly after the middle of June, the appellant-employees took the position that they were entitled to compensation for the month of June based upon the gallonage sprayed *in June* less only the one semi-monthly minimum guaranteed payment which had been received by them for the first half of June. The employer interpreted the contract differently, contending that the amount of gallonage sprayed in a particular month was immaterial, and that the final compensation must be based upon the total gallonage sprayed *for the entire job,* less all minimum monthly payments *for the entire job.* Without setting forth the specific forth the specific computations involved, suffice it to say that this latter method of computation would have resulted in a substantially lesser amounted of final compensation due to the appellants.

Although both the appellants and appellee take the position on this appeal that the contract is not ambiguous, we agree with the trial judge's determination that the contract was ambiguous and that parol evidence was admissible as an aid to its interpretation.[4] This ambiguity arises from the fact that while the guarantee in subparagraph A-4 is stated on a monthly time period, there is no time period specified in subparagraph A-1 as a basis for computing the gallonage compensation. Thus, if the gallonage compensation is computed on a monthly basis so as to coincide with the only time period specified in Article II, then the employees' interpretation is correct. On the other hand, if the gallonage compensation is computed on a per job basis, without reference to the "minimum guarantee . . . per month" provision, then the employer's computation is correct. While the employer argues that the monthly guarantee provisions in subparagraph A-4 should be interpreted as merely providing for "advances" against the ultimate total compensation computed at the end of the job based upon the total gallons sprayed, such an interpretation is arguably contrary to the "minimum guarantee" language of subparagraph A-4, and also contrary to evidence introduced by the employer which

4. Much parol testimony was admitted in this trial to the court. Although the purpose of some of the parol testimony was limited to the establishment of the employer's good faith and reasonableness as a defense to the treble damages issue, much of the parol testimony was not so limited.

indicates an intention that the payments made pursuant to subparagraph A-4 were not merely advances, but true monthly guarantee payments intended as an alternate compensation basis in the event that the gallonage compensation computed at the conclusion of the job did not equal the total of the monthly guarantee payments.

Both parties introduced parol evidence seeking to bolster their respective positions in the trial court. Evidence was introduced concerning the previous year's contract between the parties and the manner in which compensation was paid thereunder. However, this evidence was of little or no value in establishing the proper interpretation of the provisions in question, inasmuch as the compensation paid in 1973 would have been the same under either construction now urged by the parties. Much of the testimony which was introduced by the appellant-employees relating to allegedly "normal" or "customary" compensation provisions in other aspects of the aviation industry was of questionable materiality because of foundational deficiencies. Likewise, evidence introduced by the employer concerning the provisions of its underlying contracts with the Canadian Government, while obviously relevant as to what the employer subjectively intended by the provisions in question,[5] was of marginal, if any relevance, in resolving the ambiguity, because there was no showing that the employees had knowledge of the provisions of these contracts with the Canadian Government prior to entering into the contract in question.

After hearing all of the evidence, including substantial probative evidence not mentioned in this decision, the trial judge resolved the ambiguity in favor of the appellant-employees. While from our review of the cold record it appears to us that the preponderance of the evidence was in favor of the interpretation urged by the employer, we cannot say that there was no evidence to support the result reached by the trial judge. In arriving at our conclusion that the trial judge did not err in resolving the ambiguity in favor of the appellants, we have taken into consideration the rule of construction that any ambiguity in a contract should be construed most strongly against the drafter, who in this case was the employer. *E. g., Harford v. National Life & Casualty Insurance Co.*, 81 Ariz. 43, 299 P.2d 635 (1956).

The judgment is affirmed.

FROEB, C. J., Division 1, concurs.

NELSON, Judge, concurring in part, dissenting in part.

Although I concur in the majority's holdings regarding the good faith aspect of this wage dispute (*see Apache East, Inc. v. Wiegand, supra*) and the interpretation of the employment contracts, I must dissent from that portion of the decision that refuses to differentiate the portion of the statute (A.R.S. § 23–355, *supra*) providing for costs and reasonable attorney's fees from the portion allowing a recovery of "treble damages" based upon the amount of wages unpaid.

I would hold that an award of attorney's fees is mandatory whenever an employee is ultimately successful in a "failure to pay wages" claim filed under A.R.S. § 23–355. Without such a result, the whole purpose of the statute is frustrated, as it will be in this case.

The total amount of the wage judgments in this case, for both employees, is $2,695.98. To this point in time, this case has involved counsel in pleadings, vigorous pre-trial motions and discovery work, a two-day court trial, post-trial motions, and a complete civil appeal and cross-appeal, including oral argument. An affidavit of record in this case recites the expenditure of a total of 69 hours, including most, but not all, post-trial memorandum and motions, and not including any of the time spent on this appeal. The affidavit further suggests a rate of $50 per hour, certainly a reasonable rate in this

---

5. This evidence was material to a determination of the good faith of the employer concerning the treble damages issue.

day and age. Thus we have an attorney's fee of $3,450.00 for the trial of this action. When you add another $2,500 to $3,500 to that sum for the processing of the appeal, and compare it with the total sums recovered ($2,695.98), the appellants are more than $4,000 in the red after *successfully* prosecuting a "failure to pay wages" claim under A.R.S. § 23–355, *supra.* Such a result cannot have been contemplated by the legislature in enacting this "remedial" statute.

This statute should be liberally construed "to advance the remedy provided by the act". *Brandt v. Impero,* 1 Wash.App. 678, 463 P.2d 197, 199 (1969). *See also: Apache East, Inc. v. Wiegand, supra; Acevedo v. Phoenix Opportunities Industrialization Center,* 27 Ariz.App. 156, 551 P.2d 1322 (1976). While I concurred in *Apache East, supra,* since the treble damage portion of the statute is clearly discretionary and is invoked as a penalty, I believe the awarding of costs and attorney's fees is not to penalize the employer but to enable the employee to avail himself of the forum.

While A.R.S. § 12–341.01, as indicated by the majority (*see* Note 1, *supra* ) was enacted subsequent to this litigation and may not apply to this type of litigation even now (*see* A.R.S. § 12–341.01, subsection A), its language is nonetheless useful in construing the earlier statute on the same subject matter, even though more specific. *See generally: Shirley v. Superior Court in and for County of Apache,* 109 Ariz. 510, 513 P.2d 939 (1973), *cert. denied* 415 U.S. 917, 94 S.Ct. 1415, 39 L.Ed.2d 472 (1974); *Arizona State Highway Commission v. Nelson,* 105 Ariz. 76, 459 P.2d 509 (1969). In subsection B of A.R.S. § 12–341.01, *supra,* the legislature provides:

"B. The award of reasonable attorney's fees should be made to mitigate the burden of the expense of litigation for a just claimant. It need not equal or relate to the attorney's fees actually paid or contracted."

Contrast this language with that portion of A.R.S. § 23–355 dealing with costs (generally not discretionary, A.R.S. §§ 12–341 et seq.) and attorney's fees:

". . ., together with costs *and reasonable attorneys' fees to be allowed by the court on the basis of time and effort expended by counsel in behalf of the plaintiff-employee."* (Emphasis added)

In directing the court to allow the attorney's fees to be computed based upon actual time and effort on the one hand (A.R.S. § 23–355) and only in an amount to mitigate the actual cost on the other hand (A.R.S. § 12–341.01), it appears to me that there is a strong legislative intent to force the employer to pay the full cost of wage litigation, including the actual attorney's fees incurred, when the plaintiff employee is a "just claimant". If this is not the case, it will only be possible for the average wage earner to avail himself of this statutory remedy when the refusal to pay wages is obviously arbitrary and malicious. In every other case, he runs the risk of losing more than he gains even when he "wins" (as here), in direct contravention of the intent of the legislature to provide him a remedy.

There is sufficient discretion in the "treble damage" provision to cover the issue of good or bad faith. To extend that discretion to the allowance of attorney's fees is to totally emasculate the purpose of this remedial statute.

I would reverse that portion of the judgment which refused to award attorney's fees as directed by the statute. In addition, I would request an itemization of counsel's time spent on appeal and award attorney's fees in this Court in accordance with the statute.