274 P.3d 532

Irene E. D'AMICO, Plaintiff/Counterdefendant/Appellee/Cross–Appellant,

v.

STRUCTURAL I COMPANY, Defendant/Counterclaimant/Appellant/Cross–Appellee.

Irene E. D'Amico, Plaintiff/Appellant,

v.

Structural I Company,
Defendant/Appellee.

Irene E. D'Amico,
Plaintiff/Counterdefendant/Appellee,

v.

Structural I Company,
Defendant/Counterclaimant/Appellant.

Nos. 1 CA–CV 09–0493, 1 CA–CV
10–0569, 1 CA–CV 10–0762.

Court of Appeals of Arizona,
Division 1, Department B.

April 3, 2012.

panel of the court and retired effective December 31, 2011. In accordance with the authority granted by Article 4, Section 3 of the Arizona Constitution and pursuant to Arizona Revised Statutes section 12–145 (2003), the Chief Justice of the Arizona Supreme Court has designated Judge Barker as a judge pro tempore in the Court of Appeals, Division One, for the purpose of participating in the resolution of cases assigned to this panel during his term in office.

Cavanagh Law Firm By David A. Selden, Julie A. Pace, Jodi R. Bohr, Phoenix, Attorneys for Structural I.

Cohen Law Firm By Larry J. Cohen, Phoenix, Attorneys for Irene D'Amico.

## OPINION

JOHNSEN, Judge.

¶ 1 A framing company fired its chief executive officer, who then sued the company for breach of contract. We address two issues raised by the resulting jury verdicts and judgments in favor of the former officer. For the reasons set forth below, we hold that on appeal, a litigant may not contest a decision by the superior court to admit arguably privileged testimony when the litigant does not hold the privilege that protects the testimony. We also hold the superior court has discretion to decline to award treble damages in a wage claim even when the employer did not withhold the wages in good faith.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Structural I Company was a family-owned framing company founded and operated by Mary Jo and Doug McLeod.[1] As their retirement approached, the McLeods were seeing a counselor, Sharon Cottor, about personal and business matters. When the McLeods told Cottor they wanted to transition out of day-to-day involvement in Structural I, she suggested they hire a "bridge CEO" to run the company while younger insiders developed their management skills. At Cottor's suggestion, Structural I hired Irene D'Amico as a consultant, then negotiated an agreement to bring her on as CEO. Under the agreement, Structural I would pay D'Amico $200,000 a year in salary, plus a bonus based on the company's net income. The agreement, dated July 2003, was for a term of five years and provided that D'Amico could be terminated only for

---

1. We view the evidence in the light most favorable to sustaining the jury's verdicts. *See S Dev.* *Co. v. Pima Capital Mgmt. Co.*, 201 Ariz. 10, 18, ¶ 16, 31 P.3d 123, 131 (App.2001).

cause. Things did not go well, however. The McLeods disputed D'Amico's calculation of her bonuses in 2004 and 2005, and other disagreements also arose. Structural I finally discharged D'Amico in April 2006.

¶ 3 D'Amico sued Structural I, alleging it breached the agreement by terminating her without cause and withholding wages in bad faith. Structural I counterclaimed, alleging breach of fiduciary duty, fraud, unjust enrichment, fraudulent concealment and replevin.

¶ 4 After a 13-day trial, the jury returned six special verdicts. It found Structural I breached by terminating D'Amico without cause and by shorting her a total of $29,792 in bonuses for 2004 and 2005. It awarded D'Amico $547,000 in unpaid salary for the duration of the agreement, plus $177,054, which the parties stipulated would have been D'Amico's 2006 bonus. Of the total wages assessed of $753,846, the jury found there was a good-faith dispute over just $229,792. The jury also found for D'Amico on Structural I's claims for fraudulent inducement, fraud and unjust enrichment. It concluded, however, that D'Amico breached her fiduciary duty to Structural I and awarded Structural I $150,000 in damages. After calculating prejudgment interest, entering awards of attorney's fees and costs and setting off the verdicts against each other, the court entered judgment in favor of D'Amico for $910,616.

¶ 5 Both parties appealed. In this opinion, we address two issues raised by D'Amico's claim for breach of contract. Pursuant to Arizona Rule of Civil Appellate Procedure 28(g), we resolve the other issues raised by the appeals in a separate memorandum decision.

## DISCUSSION

### I. Psychologist–Patient Privilege.

■ ¶ 6 Structural I argues the superior court erred by denying its Motion for Judgment as a Matter of Law and Motion for a

New Trial pursuant to Arizona Rules of Civil Procedure 50(b) and 59(a). Among other things, Structural I argues the superior court should have excluded privileged testimony by Cottor concerning her personal counseling sessions with the McLeods.[2]

■ ¶ 7 Although Cottor is a clinical social worker and not a psychologist, D'Amico does not dispute that a privilege may protect Cottor's confidential communications with her clients in counseling sessions about personal matters. A psychologist's confidential communications with her patient are privileged and "are placed on the same basis as [those] provided by law between attorney and client." *Bain v. Superior Court*, 148 Ariz. 331, 333, 714 P.2d 824, 826 (1986) (citing Arizona Revised Statutes ("A.R.S.") section 32–2085). Once it attaches, this privilege prohibits pretrial discovery of privileged information and testimony about "information within the scope of the privilege." *Id.* We review *de novo* whether a privilege exists. *State v. Miles*, 211 Ariz. 475, 477, ¶ 7, 123 P.3d 669, 671 (App.2005). We also review *de novo* whether a party has standing to assert the privilege. *Id.*

■ ¶ 8 A psychologist's client holds the privilege. A.R.S. § 32–2085 (West 2012); *see also State v. Sucharew*, 205 Ariz. 16, 21, ¶ 10, 66 P.3d 59, 64 (App.2003) (attorney-client privilege "belongs to the client").[3] Put differently, the privilege is "personal to the client." *State v. Griswold*, 105 Ariz. 1, 5, 457 P.2d 331, 335 (1969). For that reason, on appeal, "the erroneous denial of the privilege can only be complained of by the client whose privilege has been infringed." 1 McCormick on Evidence § 92 (6th ed. 2006). Thus, appellate review of a decision to admit arguably privileged testimony is only available if the client is a party to the appeal; if the client is not a party, the appellant "is without recourse." *Id.* On appeal, a litigant cannot assert a privilege that was "not created for his benefit." *Id.*

---

2. We understand the testimony at issue concerned emotional issues involving a McLeod family member, whom D'Amico argued was to blame for some of Structural I's poor financial performance.

3. Absent material revision after the relevant date, we cite a statute's current version.

¶ 9 While Arizona courts have not addressed this issue, other jurisdictions follow the rule stated in McCormick's treatise. *See, e.g., United States v. Harrelson,* 754 F.2d 1153, 1169 (5th Cir.1985) (client's wife may not assert attorney-client privilege held by her husband); *United States v. Dien,* 609 F.2d 1038, 1043–44 (2d Cir.1979) (defendant may not assert marital privilege held by another defendant); *United States v. Crockett,* 534 F.2d 589, 604 (5th Cir.1976) (refusing to address marital privilege question because alleged holder of privilege was not a party to appeal); *People v. Corona,* 211 Cal.App.3d 529, 259 Cal.Rptr. 524, 532 (1989) (citing Cal. Evid.Code § 918) (appellant may challenge privilege ruling only if he holds the privilege); *Schaibly v. Vinton,* 338 Mich. 191, 61 N.W.2d 122, 124 (1953) (trial ruling on privilege cannot be appealed when owner of privilege is not party to lawsuit). We conclude the rule these cases apply is sensible and adopt it.

¶ 10 At issue in this case is testimony by Cottor concerning her personal counseling sessions with the McLeods.[4] Any privilege that may have protected those sessions was held not by Structural I but by the McLeods. The McLeods were not parties to the lawsuit and are not parties to this appeal. Because Structural I does not hold the privilege, it lacks standing to argue the superior court erred when it admitted Cottor's testimony concerning her counseling sessions with the McLeods.[5]

## II. Treble Damages.

■ ¶ 11 D'Amico argues the superior court abused its discretion by refusing to treble her damages pursuant to A.R.S. § 23–355(A) (2012). Under that statute, "if an employer, in violation of this chapter, fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages."

¶ 12 Section 23–355(A) plainly does not impose treble damages whenever an employer withholds wages. We know this because another statute, A.R.S. § 23–352 (2012), states in relevant part that "[n]o employer may withhold or divert any portion of an employee's wages unless ... [t]here is a reasonable good faith dispute as to the amount of wages due...." Put differently, § 23–352 allows an employer to withhold wages when the employer disputes in good faith that it owes the wages. Certainly it must follow that treble damages may not be awarded pursuant to A.R.S. § 23–355(A) when an employer withholds wages subject to a good-faith dispute. *See Apache East, Inc. v. Wiegand,* 119 Ariz. 308, 312, 580 P.2d 769, 773 (App.1978) ("The treble damages penalty should not be awarded when there is a reasonable good faith wage dispute between the employer and the employee.").

¶ 13 The jury in this case concluded that Structural I owed D'Amico $753,846 in wages, and that the company had disputed "in good faith" only $229,792 of that amount.[6] D'Amico argues that because the jury necessarily found that the remaining $524,054 was not disputed in good faith, the court was required to treble those damages pursuant to A.R.S. § 23–355(A).

¶ 14 In explaining its denial of D'Amico's request for treble damages, the superior court stated that "there was a good faith dispute concerning the amount due [D'Amico] under the employment contract." This conclusion, however, flies in the face of the jury's verdict that only $229,792 of the total owed of $753,846 was disputed in good faith.

¶ 15 The court also observed that the amount due D'Amico under her employment agreement was "not a set amount," but "required a calculation based on the company's success." While a disagreement over the application of a complex compensation formula contract may form the basis of a good-faith dispute, *Cummings v. Aviation Specialties*

---

**4.** Structural I does not contend that the testimony at issue concerned Cottor's business counseling sessions with the McLeods.

**5.** In our separate memorandum decision, we reject Structural I's other arguments in support of

its appeal from the judgment in favor of D'Amico.

**6.** This is the sum of the amounts the jury found D'Amico was owed for her 2004 and 2005 bonuses and one year of her $200,000 annual salary.

*Trade Corp.,* 120 Ariz. 536, 537, 587 P.2d 255, 256 (App.1978), we presume the jury applied that standard when it determined that Structural I disputed in good faith only $229,792 of D'Amico's damages.

¶ 16 Nevertheless, although we conclude the factors the superior court cited do not support its decision to decline D'Amico's request for treble damages, we reject her contention that the court erred as a matter of law by refusing to treble the damages the jury found were not disputed in good faith. Contrary to D'Amico's argument, even when an employer has no good-faith basis to dispute wages owed to an employee, the superior court has discretion to deny the employee's request for treble damages under A.R.S. § 23-355(A).

¶ 17 This conclusion is consistent with the general rule, which is that treble damages are not mandatory under § 23-355(A), but are left to the discretion of the superior court. *Crum v. Maricopa County,* 190 Ariz. 512, 514–15, 950 P.2d 171, 173–74 (App.1997). Although the circumstances in *Crum* were different, in that case we rejected the argument D'Amico makes here, which is that § 23-352(3) defines the only circumstance in which a court may refuse treble damages in a case for unpaid wages. 190 Ariz. at 515, 950 P.2d at 174. As we stated in *Crum,* if the legislature had intended to constrain in that fashion the discretion § 23-355(A) grants to the superior court, it would have done so expressly. In the absence of a statutory directive, we abide by our conclusion in *Crum* that the language in § 23-355(A) that an employee "may recover" treble damages means not that the superior court must make such an award, but that it may exercise its discretion to do so. *See Sanborn v. Brooker & Wake Prop. Mgmt., Inc.,* 178 Ariz. 425, 429, 874 P.2d 982, 986 (App.1994) (employer who withholds wages in bad faith faces "possibility of treble damages"). Among the factors the court may find relevant to its determination are the origin and nature of the dispute, efforts one party or the other made to resolve the dispute short of litigation, the nature of the relationship between the employer and employee, and other contemporaneous acts by either party not bearing directly on the alleged breach of contract.

¶ 18 Because the reasons the superior court cited do not support its refusal to treble the damages the jury found were not disputed in good faith, we vacate the order declining D'Amico's request for treble damages and remand to allow the court to exercise its discretion in considering D'Amico's request. While treble damages may be awarded under § 23-355(A) when an employer has withheld wages without reason, *see, e.g., Schade v. Diethrich,* 158 Ariz. 1, 12, 760 P.2d 1050, 1061 (1988); *Patton v. Mohave County,* 154 Ariz. 168, 172, 741 P.2d 301, 305 (App.1987), we do not mean in this opinion to express any view of the proper outcome of that decision by the superior court.

## CONCLUSION

¶ 19 For the reasons stated above and in our companion memorandum decision, we reverse the judgment in favor of Structural I on its claim for breach of fiduciary duty against D'Amico. We vacate and remand for further proceedings consistent with this opinion the superior court's order declining D'Amico's request for treble damages. Otherwise, we affirm the judgments.

CONCURRING: MARGARET H. DOWNIE, Judge, and LAWRENCE F. WINTHROP, Chief Judge.