# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

DR. ASHWIN REDDY, and 2nd CHANCE FOUNDER HOLDINGS, INC., a Delaware corporation,

Plaintiffs,

v.

2nd CHANCE TREATMENT CENTERS, LLC, a Delaware limited liability company, and 2nd CHANCE HOLDINGS, LLC, a Delaware limited liability company, and 2nd CHANCE INERMEDIATE, INC., a Delaware corporation,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 2024-0193-SKR

Submitted: September 17, 2024
Decided: December 12, 2024

## MEMORANDUM OPINION AND ORDER

*Upon Defendants' Motion to Dismiss*

## GRANTED IN PART, DENIED IN PART.

Lauren P. DeLuca, Esq., Shaun Michael Kelly, Esq., Anna Brousell, Esq., CONNOLLY GALLAGHER LLP, Wilmington, Delaware. *Attorneys for Plaintiffs Dr. Ashwin Reddy and 2nd Chance Founder Holdings, Inc.*

Kamal Sleiman, Esq., MCDERMOTT WILL & EMERY LLP, Miami, Florida, Ethan H. Townsend, Esq., Anna L. Fosberg, Esq., MCDERMOTT WILL & EMERY LLP, Wilmington, Delaware. *Attorneys for Defendants 2nd Chance Treatment Centers, LLC, 2nd Chance Holdings, LLC, and 2nd Chance Intermediate, Inc.*

**Rennie, J.**

# I. INTRODUCTION

Plaintiffs, Dr. Ashwin Reddy and 2nd Chance Founder Holdings, Inc., sold their company to Defendants. As part of their agreement governing the sale, the parties placed certain funds in escrow for indemnification purposes and granted Defendants the right to request distribution from the escrowed funds. Plaintiff, Dr. Ashwin Reddy, entered into a separate agreement that entitles him to a performance bonus. Two Civil Investigative Demands (the "CIDs") were directed to the company, and Defendants made a claim for indemnification against Plaintiffs based on the CIDs. The amount of the claim was not specified. Defendants withheld the escrowed funds and the performance bonus because of the CIDs.

Plaintiffs sued to recover the escrowed funds, the performance bonus and to obtain information about the CIDs. Presently before the Court is Defendants' Motion to Dismiss (the "Motion").[1] For the following reasons, Defendants' Motion to Dismiss is **GRANTED** as to Count I but **DENIED** in all other respects.

---

[1] Defs' Mot. Dismiss Verified 1st Am. Compl. (D.I. No. 11).

## II. BACKGROUND[2]

### A. Parties[3]

Plaintiff, Ashwin Reddy, M.D. ("Dr. Reddy"), is the founder and former Chief Medical Officer of 2nd Chance Treatment Centers.[4] Dr. Reddy is a board-certified psychiatrist with expertise in addiction treatment.[5]

Plaintiff, 2nd Chance Founder Holdings, Inc. (the "Seller"), is a Delaware corporation with its principal place of business in Arizona.[6]

Defendant, 2nd Chance Treatment Centers (the "Company"), is a Delaware limited liability company with its principal place of business in Arizona.[7] The Company is a full-service outpatient clinic specializing in treating patients with various mental health and substance use disorders.[8] It was Dr. Reddy's employer from April 23, 2021 to June 9, 2022.[9]

---

[2] The following facts are derived from the allegations in Plaintiffs' Amended Complaint as well as from documents incorporated into the pleading by reference. *See* Am. Compl. (D.I. No. 5).

[3] This opinion refers to Plaintiff Ashwin Reddy and Plaintiff 2nd Chance Founder Holdings, Inc. collectively as "Plaintiffs" and refers to Defendant 2nd Chance Treatment Centers, Defendant 2nd Chance Intermediate, Inc., and Defendant 2nd Chance Holdings, LLC collectively as "Defendants."

[4] Am. Compl. ¶ 10.

[5] Am. Compl. ¶ 24.

[6] Am. Compl. ¶ 13.

[7] Am. Compl. ¶ 11.

[8] Am. Compl. ¶ 26.

[9] *Id.*

Defendant, 2nd Chance Intermediate, Inc. (the "Buyer"), is a Delaware corporation with its principal place of business in Arizona.[10] It is a subsidiary company of Defendant 2nd Chance Holdings, LLC.[11]

Defendant, 2nd Chance Holdings, LLC (the "Parent"), is a Delaware limited liability company with its principal place of business in Arizona.[12] It is the parent company of the Buyer.[13]

## B. The Acquisition of the Company

On April 23, 2021, Plaintiffs (the "Sellers") entered into a transaction with the Buyer and the Parent, in which Plaintiffs sold the Company's securities to the Buyer in exchange for cash and equity in the Parent.[14] Several documents were executed at the time of the transaction; those documents are central to the instant dispute.

## C. The Securities Purchase and Contribution Agreement (the "SPCA")

The transaction was executed through a Securities Purchase and Contribution Agreement (the "SPCA").[15] The SPCA contains provisions that govern the parties' rights and obligations in case any third parties raise claims that may entitle the Buyer to indemnification.[16]

---

[10] Am. Compl. ¶ 14.
[11] *Id.*
[12] Am. Compl. ¶ 12.
[13] *Id.*
[14] Am. Compl. ¶ 29.
[15] Am. Compl. ¶ 2.; *see* Am. Compl., Ex. C (hereinafter "SPCA").
[16] SPCA § 6.6.

*(1) Indemnification by the Sellers (Section 6.1(a))*

Section 6.1(a) of the SPCA sets forth the Buyer's right to seek indemnification from the Sellers.[17] It provides, in relevant part, that:

> Subject to the terms and conditions of this Article 6, the Seller Parties shall, jointly and severally, indemnify and hold harmless Parent, Buyer, Holdings, the Company and each of their respective Affiliates, and their respective successors and assigns (the "Buyer Indemnitees") from and against the entirety of any Adverse Consequences that any Buyer Indemnitee may suffer or incur (including any Adverse Consequences they may suffer or incur after the end of any applicable survival period; provided, however, that an indemnification claim with respect to such Adverse Consequence is made pursuant to this Article 6 prior to the end of any applicable survival period) resulting from, arising out of, or caused by (a) any breach or inaccuracy of any representation or warranty made in Section 2.1 or in Article 3, (b) any breach of any covenant or agreement of any Seller Party in this Agreement[….][18]

*(2) Notice of a Third Party Claim (Section 6.6(a))*

Another provision at issue here is Section 6.6(a) of the SPCA, which sets forth the notice requirement for any third-party claims:

> If a third party initiates a claim, demand, dispute, lawsuit or arbitration (a "***Third Party Claim***") against any Person (the "***Indemnified Party***") with respect to any matter that the Indemnified Party might make a claim for indemnification against Buyer or the Seller Parties hereunder (in such context, the "***Indemnifying Party***") under this <u>Article 6</u>, then the Indemnified Party must promptly notify the Indemnifying Party in writing of the existence of such Third Party Claim and must deliver copies of any documents served on the Indemnified Party with respect to the Third Party Claim; <u>provided, however</u>, that any failure on the part of an Indemnified Party to so notify an Indemnifying Party shall not limit any of the obligations of the Indemnifying Party under this <u>Article</u>

---

[17] SPCA § 6.1(a).
[18] *Id.*

<u>6</u> (except to the extent such failure materially prejudices the defense of such proceeding).[19]

The parties dispute the informational obligations Section 6.6(a) imposes on Defendants and whether Defendants fulfilled those obligations.[20]

*(3) Indemnification Claim Threshold (Section 6.4(a))*

Further, Section 6.4(a) of the SPCA limits the Seller Parties' liability of indemnification with a claim threshold:

> [w]ith respect to the [Indemnification by the Seller Parties], the Seller Parties will have no liability with respect to such matters until the Buyer Indemnitees have suffered aggregate Adverse Consequences by reason of all such breaches in excess of $175,000 (the "***Threshold***"), after which point the Seller Parties will be obligated to indemnify the Buyer Indemnitees from and against all Adverse Consequences from dollar one[.][21]

Notably, however, the claim threshold does not apply "in respect of any Adverse Consequences relating to [] breaches of the Excluded Representations[.]"[22] Among the Excluded Representations are any representations made in Section 3.20 of the SPCA (titled "Healthcare Compliance").[23] Representations made in Section 3.20 include the representation that "[t]he Company is, and since January 1, 2015

---

[19] SPCA § 6.6(a) (emphases in original).
[20] Am. Compl. ¶¶ 55, 76; Defs.' Opening Br. Supp. Their Defs.' Mot. (D.I. No. 15) (hereinafter "Defs.' Mot.") at 11–12.
[21] SPCA § 6.4(a) (emphasis in original).
[22] *Id.*
[23] SPCA § 6.3.

has been, in compliance in all material aspects with all applicable Healthcare Laws,"[24] which includes the False Claims Act (the "FCA").[25]

*(4) Plaintiffs' Right to Defend Against Third Party Claims (Section 6.6(b))*

Also related to the dispute here is Section 6.6(b) of the SPCA. Section 6.6(b) provides the Indemnifying Party (Plaintiffs) "the right to defend the Indemnified Party [Defendants] against the Third Party Claim" upon satisfaction of certain conditions.[26]

Section 6.6(b) further provides that "[t]he Indemnifying Party will keep the Indemnified Party apprised of all material developments, including settlement offers, with respect to the Third Party Claim and permit the Indemnified Party to participate in the defense of the Third Party Claim."[27] The parties dispute whether Section 6.6(b) imposes a duty on the *Indemnified Party* to provide relevant information, even though its express terms only impose such a duty on the *Indemnifying Party*.[28]

---

[24] SPCA § 3.20(a).
[25] SPCA art. 8, Definition of "***Healthcare Law.***"
[26] SPCA § 6.6(b).
[27] *Id.*
[28] Defs.' Mot. at 11–13; Pls.' Answering Br. Opp'n Defs.' Defs.' Mot. (D.I. No. 16) (hereinafter "Pls.' Opp'n") at 12–13.

**D. The Escrow Agreement**

Simultaneously with the sale, the Buyer and Founder Holdings entered into an Escrow Agreement.[29] The Escrow Agreement provides for the deposit of certain funds (the "Indemnity Escrow Funds") to be held in escrow during the time period within which the Buyers may raise claims of indemnification (the "Indemnity Escrow Claims") against the Indemnity Escrow Funds.[30]

To properly raise an Indemnity Escrow Claim, the Buyer must send a written notice by the Release Date.[31] Pursuant to Section 4(b)(iii) of the Escrow Agreement, such notice must:

> to the extent known by Buyer at the time, state in reasonable detail the amount or an estimated amount of such Indemnity Escrow Claim, if known (the "***Distribution Request Amount***"), and shall specify the facts and circumstances, to the extent known by Buyer at the time, that form the basis (or bases) for such Indemnity Escrow Claim (a "***Claim Notice***").[32]

Section 4(b)(iv) of the Escrow Agreement provides that, after a Claim Notice is issued, the Seller may issue a written Dispute Notice within 15 calendar days to dispute its liability contained in the Claim Notice.[33] If a Dispute Notice is issued, the Escrow Agent is required to:

---

[29] Am. Compl. ¶ 30; Am. Compl. Ex. C (SPCA), Exhibit C: Escrow Agreement (hereinafter "Escrow Agreement").
[30] Am. Compl. ¶ 30; *see generally* Escrow Agreement.
[31] Escrow Agreement § 4(b)(iii).
[32] *Id.* (emphasis added).
[33] *Id.*

distribute the amount set forth in the Claim Notice that is *not disputed* in the Dispute Notice to Buyer and retain the amount (the "Disputed Amount") set forth in the related Dispute Notice until the earlier to occur of the following: (A) Seller and Buyer jointly direct the disbursement of the Disputed Amount or any portion thereof by delivering a Joint Release Instruction to the Escrow Agent and (B) the Escrow Agent receives a Final Determination awarding the Disputed Amount or any portion thereof to Buyer or Seller, as the case may be....[34]

A "Final Determination" is defined, in relevant part, as "a final non-appealable order of any court of competent jurisdiction having proper authority[.]"[35]

Section 4(b)(i) of the Escrow Agreement requires the undisputed portion of the Escrow Funds to be distributed on a specific date:

On the fifth (5th) Business Day following April 23, 2023 (the "***Release Date***"), the Escrow Agent shall deliver to Seller all of the remaining Indemnity Escrow Funds *less the aggregate amount, if any, of funds requested for distribution* from the Indemnity Escrow Funds in *all pending claims* (each, an "***Indemnity Escrow Claim***") delivered by Buyer on or prior to the Release Date in accordance with Section 4(b)(iii).[36]

The parties dispute whether Defendants may instruct the Escrow Agent to withhold the entirety of the Escrow Funds past the Release Date without requesting a specific amount for indemnification.[37]

---

[34] Escrow Agreement § 4(b)(iv).
[35] Escrow Agreement § 4(d)(ii).
[36] Escrow Agreement § 4(b)(i) (emphases added).
[37] *See* Defs.' Mot. at 15–19; Pls.' Opp'n at 15–18.

## E. Dr. Reddy's Performance Bonus

On April 23, 2021, Dr. Reddy and the Company entered into the Employment Agreement, under which Dr. Reddy was entitled to a "De Novo Location Bonus" of up to $2,000,000 (the "Performance Bonus"), if the Company opened four or more new practice locations between April 23, 2021 and April 23, 2023.[38] The Company successfully opened four more locations during the designated time period.[39]

Dr. Reddy's employment with the Company ended, pursuant to the Separation Agreement that was entered into on July 8, 2022.[40] The Separation Agreement provides that Dr. Reddy shall receive the Performance Bonus on April 24, 2023, if Dr. Reddy complies with "the surviving terms of SPCA," among other conditions.[41]

Importantly, the SPCA provides that, in the case of a third-party claim, the Buyer may recover the claim amounts by setting off against Dr. Reddy's Performance Bonuses:

> (d) Subject to the terms of Section 6.7(c), Buyer shall be entitled, but not obligated, to recover any amounts due from the Seller Parties under this Agreement by setting off such amounts against the Equity Consideration or the Performance Bonuses (as defined in the Dr. Reddy EA) payable pursuant to the Dr. Reddy EA[;][42]

but only if the Indemnity Escrow Funds is insufficient:

---

[38] Am. Compl. ¶ 33; Am. Compl. Ex. B (hereinafter "Employment Agreement).
[39] Am. Compl. ¶ 33.
[40] Am. Compl. ¶¶ 37–38; Am. Compl. Ex. A (hereinafter "Separation Agreement").
[41] Separation Agreement §§ 2(c), 7.
[42] SPCA § 6.7(b) (underline in original).

9

(c) Buyer agrees to first seek indemnification against the Indemnity Escrow Fund. To the extent the Indemnity Escrow Fund is insufficient in value to cover the claimed amount, Buyer shall have the right to pursue any other remedies to recover any unpaid claimed amounts, subject to the limitations set forth in this Agreement.[43]

The parties dispute whether the withholding of Dr. Reddy's Performance Bonus is permissible, given the terms of the Separation Agreement and the SPCA.[44]

## F. The Civil Investigation Demands and the Escrow Dispute

The instant dispute is triggered by two Civil Investigation Demands (the "CIDs") issued to the Company. On November 18, 2022, the Buyer informed Plaintiffs in a letter (titled "Indemnification Claim") that the United States Attorney's Office for the District of Arizona had issued a CID to the Company to investigate allegations of violations of the False Claims Act (the "FCA").[45] A subsequent CID was issued in April of 2023.[46]

In the Buyer's letter, it asserted an indemnification claim against the Seller because of the first CID.[47] The Buyer informed Plaintiffs that it instructed the Escrow Agent to withhold the Escrow Funds until the indemnification claim is resolved, because the amount of the claim was "not known" at the time.[48] The Buyer further stated that it will control the Company's defense against the CID Matters,

---

[43] SPCA § 6.7(c).
[44] *See* Defs.' Mot. at 21–23; Pls.' Opp'n at 22–24.
[45] Am. Compl. ¶ 71.
[46] *Id.*
[47] Am. Compl. Ex. E (Indemnification Claim Letter).
[48] Am. Compl. Ex. E (emphasis added).

pursuant to the indemnification procedures set forth in the SPCA.[49]  In response, Plaintiffs issued their Dispute Notice to dispute their liability for the indemnification claim.[50]

Because of the CIDs, the entirety of the Escrow Funds and the Performance Bonus has been withheld past the release dates provided in the relevant agreements.[51]  The Buyer also has not provided Plaintiffs with any further information on the CIDs.[52]

## G. Procedural History

Plaintiffs bring this action to recover the Indemnity Escrow Funds and the Performance Bonus and to obtain information related to the CIDs.  Plaintiffs assert six causes of action: (1) a request for declaration that Defendants must provide Plaintiffs with the information Plaintiffs have requested concerning the CIDs (Count I);[53] (2) a request for declaration that the Indemnity Escrow Funds must be disbursed to the Seller because Defendants did not make a valid Indemnification Claim (Count II);[54] (3) a breach-of-contract claim seeking specific performance of an entry of Joint

---

[49] Am. Compl. Ex. E ("As set forth in the Purchase Agreement, the Seller Parties do not have the right to control the Company's defense against the Company CID Matters,[] because any settlement of, or any adverse judgment with respect to, such Company CID Matters is likely to establish a precedential custom or practice adverse to the continuing business interests or the reputation of the Buyer Indemnitees.").

[50] Am. Compl. Ex. F (Dispute Notice Letter).

[51] Am. Compl. ¶¶ 86, 128.

[52] Am. Compl. ¶ 74.

[53] Am. Compl. ¶¶ 80–92.

[54] Am. Compl. ¶¶ 80–92.

11

Release Instruction to release the Escrow Funds (Count III);[55] (4) a breach-of-implied-covenant claim alleging that Defendants retained in bad faith the remainder of the purchase price by raising an invalid indemnification claim;[56] (5) a claim under the Arizona Wage Act based on the non-payment of the Performance Bonus;[57] and, (6) a breach-of-contract claim based on the non-payment of the Performance Bonus.[58]

Defendants filed a Motion to Dismiss (the "Motion"),[59] and the parties submitted briefing on the Motion.[60] The Court heard oral argument on September 17, 2024.

## III. PARTIES' CONTENTIONS

The claims contained in the Amended Complaint can generally be put into three categories: A. information request (Count I); B. Escrow Funds (Counts II, III, and IV); and C. Performance Bonus (Counts V and VI).

### A. Provision of Information related to the CIDs (Count I)

Plaintiffs seek declaratory judgment that Defendants must provide Plaintiffs with the information they have requested pursuant to the SPCA.[61] Plaintiffs argue

---

[55] Am. Compl. ¶¶ 93–110.
[56] Am. Compl. ¶ 115.
[57] Am. Compl. ¶¶ 117–131.
[58] Am. Compl. ¶¶ 132–140.
[59] *See* Defs' Defs.' Mot. Verified 1st Am. Compl. (D.I. No. 11).
[60] *See generally* Defs.' Mot. (D.I. No. 15); Pls.' Opp'n (D.I. No. 16); Defs.' Reply Br. Supp. Their Mot. Dismiss (D.I. No. 18) (hereinafter "Defs.' Reply").
[61] Am. Compl. ¶ 79.

that Defendants are required to provide CID-related information, including the amount of costs or fees expended or incurred by the Treatment Center, copies of any documents that the Treatment Center disclosed in connection with the CIDs, and information regarding all material developments related to the CIDs.[62] Plaintiffs contend that they are entitled to the information under Sections 6.6(a), 6.6(b), and 6.4(a) of the SPCA.[63]

In the opening brief in support of their Motion, Defendants argue that the contract language contained in the cited provisions is clear and unambiguous and they provided all of the required information.[64] First, Defendants state that there are two informational obligations contained in Section 6.6(a), and they complied with both of them."[65] Next, Defendants point out that Section 6.6(b) by its express terms only imposed the obligation to provide information on the *Indemnifying* Party, which is Plaintiffs.[66] Further, Defendants argue that Section 6.4(a) "does not, on its face, require Defendants to provide Plaintiffs with any information."[67]

---

[62] Am. Compl. ¶¶ 74–76.

[63] Am. Compl. ¶¶ 68–70.

[64] Am. Compl. ¶¶ 10–15.

[65] Defs.' Mot. at 12–13; *see* SPCA § 6.6(a) (requiring Defendants (1) to "promptly notify [Plaintiffs] in writing of the existence of such Third Party Claim," and (2) to "deliver copies of any documents served on [Defendants] with respect to the Third Party Claim.").

[66] Defs.' Mot. at 13; SPCA § 6.6(b) ("[t]he *Indemnifying* Party will keep the *Indemnified Party* apprised of all material developments, including settlement offers, with respect to the Third Party Claim" (emphases added)).

[67] Defs.' Reply at 6.

In response, Plaintiffs contend that, despite the lack of express contractual language, Section 6.6(b) also imposed informational obligations on the Defendants, the *Indemnified* Party.[68] Plaintiffs argue that, because Defendants blocked Plaintiffs' contractual right to defend against the CIDs, following the "facial reading" would render Section 6.6(b) meaningless.[69] Plaintiffs further argue that they are entitled to information related to the costs and fees Defendants incurred in defending the CIDs, pursuant to Section 6.4(a) of the SPCA. Section 6.4(a) of the SPCA limits the Seller Parties' liability for indemnification with a claim threshold.[70] Plaintiffs argue that, in order to determine whether the claim threshold set forth in Section 6.4(a) applies, they should receive information regarding the amount of fees or costs the Treatment Center has incurred because of the CIDs.[71]

---

[68] Pls.' Opp'n at 12–13. In their answering brief, Plaintiffs do not address the question of whether Defendants have sufficiently complied with Section 6.6(a).

[69] Pls.' Opp'n at 12.

[70] Section 6.4(a) states, in relevant part, that:

> "[w]ith respect to the [Indemnification by the Seller Parties], the Seller Parties will have no liability with respect to such matters until the Buyer Indemnitees have suffered aggregate Adverse Consequences by reason of all such breaches in excess of $175,000 (the "Threshold"), after which point the Seller Parties will be obligated to indemnify the Buyer Indemnitees from and against all Adverse Consequences from dollar one[.]"

[71] Pls.' Opp'n at 13–14.

## B. Withheld Escrowed Funds

In Counts II, III, and IV, Plaintiffs contend that they are entitled to the release of the Escrow Funds, pursuant to the Escrow Agreement.[72] In support of their position, Plaintiffs cite to Sections 4(b)(i), (iii), and (iv) of the Escrow Agreement.

Plaintiffs argue that, pursuant to these provisions, Defendants are not permitted to retain the *entirety* of the Escrow Fund without providing an amount or estimated amount of their purported Indemnification Escrow Claim.[73] Plaintiffs also argue that Defendants breached Section 4(b)(iii) of the Escrow Agreement, because they "failed to provide any detail about the substance, facts, or circumstances of the purported claim it was making against the Indemnity Escrow Funds."[74] Plaintiffs advance three alternative legal theories in seeking the release of the Escrow Funds.

First, Plaintiffs request a declaratory judgment stating that (a) no valid Indemnity Escrow Claim has been made, because Defendants did not provide an amount or estimate of the purported Claim, and (b) the Indemnity Funds must be disbursed to Founder Holdings (Count II).[75] Second, Plaintiffs argue that Defendants breached the terms of the Escrow Agreement for the same reasons (Count III).[76] Third, Plaintiffs argue that a "gap" exists in the Escrow Agreement

---

[72] Am. Compl. ¶¶ 80–116.
[73] Pls.' Opp'n at 11–15.
[74] Am. Compl. ¶ 99.
[75] Am. Compl. ¶¶ 80–92.
[76] Am. Compl. ¶¶ 93–110.

that allows Defendants to "willfully, intentionally, and in bad faith seek to deprive Plaintiffs of the benefit of the SPCA by deliberately delaying the disbursement of the remainder of the purchase price under the pretense of a potential but not yet known claim for indemnification."[77] Plaintiffs hence argue that the Court should fill the gap with the implied covenant of good faith (Count IV).[78]

Defendants counter that Plaintiffs' claims for the release of Escrow Claim fail because Defendants have complied with their obligations under the Escrow Agreement.[79] Pursuant to the Escrow Agreement, the Claim Notice only requires a written notice based on the information that the Buyer *knew at the time*.[80] Therefore, Defendants contend that their Claim Notice is valid even though it does not contain an amount or estimated amount of the Claim or additional facts and circumstances related to the CID(s).[81]

Defendants further argue that the specific performance sought by Plaintiffs is premature.[82] Under the Escrow Agreement, "in the event of a Disputed Claim, the

---

[77] Am. Compl. ¶ 115.
[78] *See* Am. Compl. ¶¶ 111–16.
[79] Defs.' Mot. at 15–18.
[80] *Id.* (citing Escrow Agreement § 4(b)(iii)). The relevant contract language states:
> Such notice shall, to the extent known by Buyer at the time, state in reasonable detail the amount or an estimated amount of such Indemnity Escrow Claim, if known (the "Distribution Request Amount"), and shall specify the facts and circumstances, to the extent known by Buyer at the time, that form the basis (or bases) for such Indemnity Escrow Claim (a "Claim Notice").
[81] Defs.' Mot. at 17–18.
[82] Defs.' Mot. at 18.

16

Disputed Amount may only be released, absent a Joint Release Instruction, *after* a final, non-appealable order of any court of competent jurisdiction.[83] Defendants argue that the fundamental prerequisite of a "Final Determination" has not occurred, and Plaintiffs are thus "putting the cart before the horse."[84]

Defendants also assert that the implied covenant that Plaintiffs seek to read into the Escrow Agreement should fail.[85] Defendants contend that it is "absurd" for Plaintiffs to posit that the Buyer was using a federal investigation into alleged violations of the FCA as a "pretext" to withhold the Indemnity Funds unjustifiably and indefinitely.[86] Defendants argue that requiring disbursement on "covenant of good faith" grounds would deprive the Buyer of the benefits of the Escrow Agreement and contradict the express terms contained therein.[87]

## C. Performance Bonus

Plaintiffs argue that withholding Dr. Reddy's Performance Bonus (1) violates the Arizona Wage Act (the "AWA") (Count V)[88] and (2) breaches the Separation Agreement (Count VI).[89] Plaintiffs seek treble damages in the amount of $6 million

---

[83] *Id.*
[84] Defs.' Mot. at 18.
[85] Defs.' Mot. at 18–19.
[86] Defs.' Reply at 8–9.
[87] *See id.*
[88] Am. Compl. ¶¶ 117–131.
[89] Am. Compl. ¶¶ 132–140.

and reasonable attorney's fees pursuant to the AWA and, in the alternative, damages in the amount of $2 million pursuant to the Separation Agreement.[90]

Defendants moved to dismiss these Counts, arguing that they are entitled to recover any amounts due from the Seller Parties under the SPCA by "setting off such amounts against Dr. Reddy's Performance Bonuses."[91] As to Count V, Defendants argue that treble damages is not available under the AWA, because the AWA permits them to withhold the Performance Bonus based on "a reasonable good faith dispute"—a contention disputed by Plaintiffs.[92] As to Count VI, Defendants argue that Dr. Reddy is not entitled to the Performance Bonus, because he failed to abide by the terms of the SPCA—specifically Section 3.20.[93]

## IV. STANDARD OF REVIEW

To survive a motion to dismiss under Court of Chancery Rule 12(b)(6), a plaintiff must plead facts sufficient to state a valid legal claim under which relief can be obtained.[94] The Court accepts "all well-pleaded factual allegations in the Complaint as true[.]"[95] The Court is "not required to accept every strained interpretation of the allegations proposed by the plaintiff."[96] Although the threshold

---

[90] Am. Compl. ¶ 130.
[91] Defs.' Mot. at 20 (internal ellipsis omitted); *see* SPCA § 6.7(d).
[92] *See* Defs.' Mot. at 19–20 (quoting A.R.S. § 23-352(3)); Pls.' Opp'n at 18–22.
[93] *See* Defs.' Mot. at 22–23.
[94] *Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 38 (Del. 1996).
[95] *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).
[96] *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001).

to survive a Rule 12(b)(6) Motion to Dismiss is minimal at this early stage of litigation,[97] the complaint should be dismissed where the Court determines "with 'reasonable certainty' that the plaintiff could prevail on no set of facts that may be inferred from the well-pleaded allegations in the complaint."[98]

When deciding a motion to dismiss, the Court may consider the complaint and the content of documents that are integral to or are incorporated by reference into the complaint.[99] "[A] claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law."[100] "[A] complaint may, despite allegations to the contrary, be dismissed where the unambiguous language of documents upon which the claims are based contradict the complaint's allegations."[101] The Court "cannot choose between two differing reasonable interpretations of ambiguous provisions."[102] Ambiguity exists "when the provisions in controversy are reasonably or fairly susceptible of different interpretations[.]"[103] "[W]hen parties present differing—but reasonable— interpretations of a contract term," the Court would need to examine extrinsic

---

[97] *Central Mortg. Co.*, 27 A.3d at 535 (Del. 2011).
[98] *Malpiede*, 780 A.2d at 1082–83.
[99] *See, e.g., In re BHC Cmmc'ns S'holder Litig., Inc.*, 789 A.2d 1, 8–9 (Del. Ch. 2001).
[100] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006) (internal quotations and citations omitted).
[101] *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 139 (Del. Ch. 2003).
[102] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003).
[103] *Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).

evidence to discern the parties' agreement; "[s]uch an inquiry cannot proceed on a motion to dismiss."[104] So, at bottom, dismissal can only happen "if the defendants' interpretation is the only reasonable construction as a matter of law."[105]

## V. ANALYSIS

### A. Plaintiffs are not entitled to declaratory judgment as to the informational obligations.

At the outset, the Court resolves the threshold question of whether Plaintiffs' requests for declaratory judgment are justiciable. "Parties to a contract can seek declaratory judgment to determine any question of construction or validity and can seek a declaration of rights, status or other legal relations thereunder."[106] For a declaratory judgment request to be justiciable, four prerequisites must be met:

> (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.[107]

Those requirements are met. There is an actual and present controversy about whether, pursuant to the terms of the relevant contracts, additional information

---

[104] *Renco Grp., Inc. v. MacAndrews AMG Holdings LLC*, 2015 WL 394011, at *5 (Del. Ch. Jan. 29, 2015).

[105] *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996).

[106] *Energy Partners, Ltd. v. Stone Energy Corp.*, 2006 WL 2947483, at *6 (Del. Ch. Oct. 11, 2006) (internal quotations omitted).

[107] *Id.*

regarding the CIDs must be provided to Plaintiffs (Count I) and whether the Indemnification Escrow Fund must be released (Count II).

Next, the Court considers whether Plaintiffs are entitled to the declaratory judgment that they request in Count I. Delaware courts "adhere to the objective theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party."[108] "When the contract is clear and unambiguous, [this Court] will give effect to the plain-meaning of the contract's terms and provisions."[109]

Plaintiffs request a declaration from the Court that the terms of the SPCA, specifically Sections 6.4(a), 6.6(a), and 6.6(b), require the Defendants to provide them with information they have requested concerning the CIDs.[110]

First, Plaintiffs argue that Section 6.4(a) should be interpreted to impose an obligation for the Buyer to provide information as to the amount of fees or costs incurred because of the indemnification claims.[111] The Court disagrees. Section 6.4(a) provides that the Seller Parties have no obligation to indemnify the Buyer until "the Buyer Indemnitees have suffered aggregate Adverse Consequences by reason of all such breaches in excess of $175,000 (the "*Threshold*")"; the Threshold does

---

[108] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (citing *NBC Universal v. Paxson Commc'ns*, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005)) (cleaned up).
[109] *Id.*
[110] *See* Am. Compl. ¶¶ 111–16.
[111] Am. Compl. ¶ 77; Pls.' Opp'n at 13–14.

21

not apply in cases of "(i) breaches of the Excluded Representations or (ii) any intentional or fraudulent breach of a representation or warranty."[112] Considering the plain meaning of the Section and the context of the instrument as a whole,[113] the Section only imposes a so-called claim threshold for the Sellers' obligation to indemnify, subject to certain exceptions.[114] It does not impose any informational obligation on the Sellers or the Buyer. Plaintiffs do not specify what language of the Section imposes such obligation, and the Court will not read additional obligations or terms into the contract.[115]

Plaintiffs further argue that such obligation is provided by Section 6.6(b). Section 6.6(b) provides that the Indemnifying Party, upon satisfaction of certain conditions, may "defend the Indemnified Party against the Third Party Claim."[116] Section 6.6(b) further requires the Indemnifying Party to keep the Indemnified Party "apprised of all material developments, including settlement offers, with respect to the Third Party Claim."[117] Accordingly, the express terms of Section 6.6(b) only

---

[112] SPCA § 6.4(a).

[113] *See Elliott Assoc., L.P. v. Avatex Corp.*, 715 A.2d 843, 854 (Del. 1998) (holding that Courts construing an agreement "must give effect to all terms of the instrument, must read the instrument as a whole, and, if possible, reconcile all the provisions of the instrument").

[114] SPCA § 6.4(a).

[115] *See Arwood v. AW Site Servs., LLC*, 2022 WL 973441, at *2 (Del. Ch. Mar. 31, 2022) ("courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.").

[116] SPCA § 6.6(b).

[117] *See id.* ("The Indemnifying Party will keep the Indemnified Party apprised of all material developments, including settlement offers, with respect to the Third Party Claim and permit the Indemnified Party to participate in the defense of the Third Party Claim.").

22

impose the informational duty on Plaintiffs, the *Indemnifying* Party, rather than on Defendants, the *Indemnified* Party.[118]

Plaintiffs argue that the facial reading of the Section renders the latter provision of Section 6.6(b) meaningless, because they were "deliberately kept from access to any underlying information about the Third Party Claim."[119] This argument is unavailing. Section 6.6(b) is not meaningless, because it clearly contemplates that the informational obligations would apply in a case where Plaintiffs control the defense against the Third Party Claim.

Plaintiffs suggest that Defendants' act of preventing Plaintiffs from participating in the defense against the CIDs was improper or impermissible.[120] That is not true. Plaintiffs' right to defend is subject to a group of conditions, and two of the conditions were not met. The first condition requires that:

> (i) the Indemnifying Party notifies the Indemnified Party in writing within 15 days after the Indemnified Party has given notice of the Third Party Claim *that the Indemnifying Party will indemnify the Indemnified Party* from and against the entirety of any Adverse Consequences the Indemnified Party may suffer resulting from, arising out of, relating to, in the nature of, or caused by, the Third Party Claim[.][121]

This condition was not met, because Plaintiffs expressly disputed their liability to indemnify in their November 18, 2022 letter response.[122]

---

[118] *See id.*
[119] Pls.' Opp'n at 12.
[120] Pls.' Opp'n at 12–13.
[121] SPCA § 6.6(b) (emphasis added).
[122] Am. Compl. Ex. F (Dispute Notice Letter).

Another condition requires that "(iv) settlement of, or an adverse judgment with respect to, the Third Party Claim is not, in the *good faith* judgment of the Indemnified Party, likely to establish a precedential custom or practice adverse to the continuing business interests or the reputation of the Indemnified Party[.]"[123] In Defendants' November 18, 2022 Claim Notice letter, they notified Plaintiffs that they believe in good faith that the matter related to the CID(s) was likely to establish such a precedential custom or practice.[124] Plaintiffs do not dispute this good faith assessment by Defendants.[125] Thus, Defendants' exercise of sole control of the defense against the CIDs is permissible under the SPCA.

Plaintiffs also rely on Section 6.6(a) for their informational claim. Section 6.6(a) requires Defendants (1) to "promptly notify [Plaintiffs] in writing of the existence of such Third Party Claim," and (2) to "deliver copies of any documents served on [Defendants] with respect to the Third Party Claim."[126] There is no dispute that Defendants complied with these obligations by sending the Claim Notice letter, to which a copy of the CID was attached.[127] Plaintiffs do not specify what part of Section 6.6(a) imposes any obligations beyond these two.

---

[123] SPCA § 6.6(b)(iv) (emphasis added).
[124] Am. Compl. Ex. E (Claim Notice Letter).
[125] Plaintiffs did not respond to this judgment in their response to the Claim Notice, nor did they dispute it in the pleadings. Am. Compl. Ex. F (Dispute Notice Letter); *see generally* Am. Compl.
[126] SPCA § 6.6(a).
[127] Am. Compl. Ex. E (Claim Notice Letter).

24

Plaintiffs have not set forth any reasonable interpretations of the relevant contractual provisions to support their contention that they are contractually entitled to the information they requested. Hence, Defendants' Motion is granted as to Count I.

**B. Plaintiffs have sufficiently pleaded their entitlement to declaratory judgment concerning the release of the Indemnity Escrow Funds (Count II).**

In Count II, Plaintiffs request a declaration that (a) no valid Indemnity Escrow Claim has been made; and (b) the Indemnity Escrow Funds must be disbursed to the Seller.[128] At the heart of the parties' dispute is the question whether the Indemnity Escrow Claim raised by Defendants precludes the release of the Indemnity Escrow Funds, when it does not specify any amounts requested for distribution. Here, the Court finds ambiguity in the relevant contractual provisions.

Section 4(b)(i) requires "all of the remaining Indemnity Escrow Funds less the aggregate amount, if any, of *funds requested for distribution* from the Indemnity Escrow Funds in all pending [Indemnity Escrow Claims]" to be released on the fifth business day following April 23, 2023.[129] The express language of this provision indicates that, in order for any remaining Indemnity Escrow Funds to be withheld, there must be pending Claims that have *requested* certain funds *for distribution*.[130]

---

[128] Am. Compl. ¶ 92.

[129] Escrow Agreement § 4(b)(i) (emphasis added).

[130] *See id* (emphases added).

25

This supports Plaintiffs' position that the Indemnity Escrow Funds should have been released when Defendants' Indemnity Escrow Claim does not specify an amount requested for distribution.[131]

On the other hand, Defendants' position also finds support in the Escrow Agreement. Section 4(b)(iii) requires the Buyer making an Indemnity Escrow Claim to provide a notice that "*to the extent known by Buyer at the time*, state in reasonable detail the amount or an estimated amount of such Indemnity Escrow Claim, *if known* (the "**Distribution Request Amount**")."[132] The qualifying clauses that come before and after the requirement to specify an amount—"to the extent known by Buyer at the time" and "if known"—indicate that it is permissible for the Buyer to make a valid Claim without specifying the Distribution Request Amount if it is not known to the Buyer at the time.[133]

The language contained in Section 6.1(a) of the SPCA further supports the validity of Defendants' Claim Notice. Section 6.1(a) provides the obligation for the Sellers to indemnify the Buyer against:

> any Adverse Consequences that any Buyer Indemnitee may suffer or incur (including any Adverse Consequences they *may suffer or incur after the end of any applicable survival period*; provided, however, that an indemnification claim with respect to such Adverse Consequence is

---

[131] *See generally* Am. Compl. ¶¶ 66–79.
[132] Escrow Agreement 4(b)(iii) (emphases added).
[133] *See id.*

made pursuant to this Article 6 *prior to the end of any applicable survival period*).[134]

The Buyer had until April 23, 2023 to file a claim for indemnification against the Seller,[135] subject to certain exceptions.[136]  Relatedly, the due date to make an Indemnity Escrow Claim pursuant to the Escrow Agreement is the fifth business day following April 23, 2023.[137]

Taken together, Section 6.1(a) of the SPCA and Section 4(b)(iii) contemplate that the Buyer may provide notice for a valid Indemnity Escrow Claim before any Adverse Consequences were to occur and before the Buyer could specify a Distribution Request Amount.  Indeed, subject to certain exceptions,[138] the Buyer *must* provide such notice in order to preserve its right to seek indemnification, if Adverse Consequences occur later.[139]

---

[134] SPCA § 6.1(a) (emphases added).

[135] *See* SPCA § 6.3 ("the Seller Parties will have no liability with respect to any claim under Section 6.1(a) unless a Buyer Indemnitee notifies the Seller Parties of such a claim on or before the date that is 24 months after the Closing Date [April 23, 2021]").

[136] *See id.* ("… provided, however, that (a) any claim relating to any representation made in Section 2.1 (Representations and Warranties of the Seller Parties), Section 3.1 (Organization and Good Standing), Section 3.2 (Authority and Enforceability), Section 3.3 (Non-Contravention), Section 3.4(d) (Debt), Section 3.11 (Tax Matters), Section 3.20 (Healthcare Compliance), Section 3.21 (Related Party Transactions), Section 3.22 (No Subsidiaries) and Section 3.23 (Brokers Fees) may be made at any time until the seventh anniversary of the Closing Date (collectively, the "Excluded Representations"), and (b) any claim related to intentional or fraudulent breaches of the representations and warranties may be made at any time without limitation.").

[137] Escrow Agreement § 4(b)(i), (iii).

[138] *See supra* note 138.

[139] *See* SPCA § 6.1.

There are two possible outcomes pertaining to this issue, each of which is supported as a reasonable interpretation of the contract. In the first possible outcome, Defendants' Indemnity Escrow Claim is valid, so the Indemnity Escrow Funds are rightfully retained by the Escrow Agent until the Claim is resolved through a Joint Release Instruction or a Final Determination.[140] This outcome aligns with Defendants' position. In the second possible outcome, Defendants' Indemnity Escrow Claim is also valid, but it has a different effect. In this outcome, because the Claim does not specify an amount for distribution, the Indemnity Escrow Funds are released pursuant to the express terms of Section 4(b)(i).[141] But the Claim only serves to preserve the Buyer's right to seek indemnification against the Sellers later. This outcome aligns with Plaintiffs' position.

At the dismissal stage, the Court is not required to choose between the two outcomes. Because the language of the relevant contracts permits two reasonable interpretations that yield contradictory outcomes, ambiguity exists which precludes dismissal of Plaintiffs' request for declaratory judgment. Hence, Count II is allowed to proceed.

**C. Plaintiffs have also sufficiently pleaded a claim for specific performance as to release of the Indemnity Escrow Funds (Count III).**

---

[140] *See* Escrow Agreement §§ 4(b)(i), (ii), (iv).
[141] Escrow Agreement § 4(b)(i).

Count III seeks specific performance in the form of an order compelling the Buyer to enter into a Joint Release Instruction to the Escrow Agent to release the Indemnity Escrow Funds.[142]

The Court has previously held that a decree of specific performance is "the appropriate form of relief to compel the release of funds from an escrow account."[143] To obtain specific performance, a party must "prove by clear and convincing evidence" that a legal remedy would be inadequate and that "(1) a valid contract exists, (2) [the party] is ready, willing, and able to perform, and (3) that the balance of equities tips in favor of the party seeking performance."[144]

Plaintiffs have sufficiently alleged that a valid contract exists and that they are ready, willing, and able to perform.[145] The remaining questions are whether Plaintiffs lack an adequate remedy at law and whether the balance of equities tips in their favor.[146] They are both answered in the affirmative.

Plaintiffs lack an adequate remedy at law because the SPCA, which both parties bargained for and stipulated to, contains a "Specific Performance" clause stating that "irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or

[142] Am. Compl. ¶ 110.
[143] *See, e.g., Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 495 (Del. Ch.), judgment entered, (Del. Ch. 2022).
[144] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).
[145] *See generally* SPCA, Escrow Agreement; *see* Am. Compl. ¶ 108.
[146] *See Osborn ex rel. Osborn*, 991 A.2d at 1158.

were otherwise breached."[147]  Moreover, "[this Court] has held that a party's failure to comply with a requirement to direct an escrow agent to release funds constitutes irreparable harm and warrants a decree of specific performance."[148]

It is also sufficiently alleged that the balance of equities tips in Plaintiffs' favor.  The factor of balancing of equities "reflect[s] the traditional concern of a court of equity that its special processes not be used in a way that unjustifiably increases human suffering."[149]  The Indemnity Escrow Funds are the last portion of the consideration that Plaintiffs bargained for in the sale of the Company.  As the Court discussed above, Plaintiffs' entitlement to the Funds is supported by a reasonable interpretation of the related contracts.  Based on that interpretation, Plaintiffs have been denied the benefits of the bargained-for transaction since April 23, 2023.

Defendants argue that the requested relief of specific performance contained in Count III and IV is "premature."[150]  The Court disagrees.

According to Defendants,

Pursuant to the express terms of the Escrow Agreement, in the event of a Disputed Claim, the Disputed Amount may only be released, absent a Joint Release Instruction, after a Final Determination. *See* Compl. Ex.

---

[147] SPCA § 9.10; *see Williams Cos., Inc. v. Energy Transfer Equity*, L.P., 2016 WL 3576682, at *2 (Del. Ch. June 24, 2016), *aff'd*, 159 A.3d 264 (Del. 2017) ("Delaware is strongly contractarian, and the presence of a provision in favor of specific performance in case of breach, as the parties contracted for here, must be respected.").

[148] *Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 496 (Del. Ch.), judgment entered, (Del. Ch. 2022) (quoting various cases for the stated proposition).

[149] *Bernard Pers. Consultants, Inc. v. Mazarella*, 1990 WL 124969, at *3 (Del. Ch. Aug. 28, 1990).

[150] Defs.' Mot. at 18.

4(b)(iv). The Escrow Agreement defines "Final Determination" to mean, in relevant part, "a final, non-appealable ordered of any court of competent jurisdiction." *Id.* § 4(d)(ii). That fundamental prerequisite has not occurred. Seller is putting the cart before the horse—its requests for specific performance are not ripe and Counts III and IV must therefore be dismissed.[151]

This argument is circular. Defendants' argument is premised on their own reading of the Escrow Agreement—that it authorizes and requires the Escrow Agent to withhold the Indemnity Escrow Funds, as though the Disputed Amount comprises the entirety of the available funds, when a claim amount is unknown or not provided. In that case, it would be premature for the Court to order the release of the Funds before the Disputed Claim is resolved.

However, the language of Section 4(b)(iv) permits an alternative interpretation. The relevant provision provides that, in the event of a Disputed Claim, "the Escrow Agent shall, within two (2) Business Days following receipt of the Dispute Notice distribute the amount *set forth* in the Claim Notice that is not disputed in the Dispute Notice and retain the amount (the "Disputed Amount") *set forth* in the related Dispute Notice" until the Claim is resolved by a Joint Release Instruction or Final Determination.[152] This provision does not state what the Escrow Agent shall do if no specific amounts have been set forth in the Claim Notice or the Dispute Notice.

---

[151] Defs.' Mot. at 18.
[152] Escrow Agreement § 4(b)(iv) (emphases added).

31

Therefore, it is at least a reasonable reading that, when no amounts have been set forth in the Notices, the Escrow Agent is not obligated to retain any amounts under this provision. Under this reading, the express terms of Section 4(b)(i) control and entitle Plaintiffs to receive the release of "all the remaining Indemnity Escrow Funds," subject to later payment after a Final Determination.[153] In this sense, Plaintiffs' request for specific performance is based on a present legal right to receive the Indemnity Escrow Funds, and thus, is not contingent on the outcome of the Disputed Claim.

Accordingly, Plaintiffs have sufficiently alleged that they are entitled to the remedy of specific performance. Hence, the Motion must be denied as to this claim.

### D. Plaintiffs have sufficiently pleaded that Defendants breached the implied covenant of good faith and fair dealing (Count IV).

"The implied covenant of good faith and fair dealing is the doctrine by which Delaware law cautiously supplies terms to fill gaps in the express provisions of a specific agreement."[154] When considering an implied covenant claim, the Court must first determine "whether the language of the contract expressly covers a particular issue, in which case the implied covenant will not apply, or whether the contract is silent on the subject, revealing a gap that the implied covenant might

---

[153] Escrow Agreement § 4(b)(i).
[154] *Allen v. El Paso Pipeline GP Co., LLC*, 2014 WL 2819005, at *10 (Del. Ch. June 20, 2014).

fill."[155]   Such a gap may exist because "[n]o contract, regardless of how tightly or precisely drafted it may be, can wholly account for every possible contingency."[156] A breach of implied covenant may be found "when the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected."[157] The reasonable expectations of the contracting parties are assessed at the time of contracting.[158]

Defendants argue that there is no gap to fill, because the express terms of the Escrow Agreement govern the circumstances under which the Indemnity Escrow Funds may be released.[159]  The Court disagrees.  It is true that the Escrow Agreement enables Defendants to request the Escrow Agent to retain a disputed amount of the Indemnity Escrow Funds, based on claims for indemnification.[160]  Nonetheless, the contract is silent as to whether this request is still valid if Defendants do not specify an amount, effectively requesting an indeterminate amount for indemnification.  The Escrow Agreement stipulates that the Indemnity Escrow Fund, which is part of the purchase price, should be delivered to Plaintiffs on the Release Date, less deductions

---

[155] *See id.*
[156] *Amirsaleh v. Bd. of Trade of City of New York, Inc.*, 2008 WL 4182998, at *1 (Del. Ch. Sept. 11, 2008).
[157] *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017).
[158] *Dieckman*, 155 A.3d at 367.
[159] Defs.' Reply at 8.
[160] *See* Escrow Agreement § 4(b)(iv).

based on Disputed Claims.[161]  Therefore, Plaintiffs may reasonably expect that such deductions should be based on enumerated amounts, and thus the only issue subject to dispute after the Release Date would be *how much* they owe Defendants based on the indemnity claims.  But this expectation is frustrated; instead, Plaintiffs are left wondering when they will receive the remaining part of the purchase price that they bargained for.  The Court, after a more fulsome record, may reasonably conclude that Defendants acted "arbitrarily or unreasonably" when they instructed the Escrow Agent to withhold the entirety of the Escrow Funds based on an indefinite indemnification amount.[162]  Hence, the implied covenant claim is sufficiently pleaded.

### E. Dr. Reddy has sufficiently pleaded that Defendants violated the Arizona Wage Act (Count V).

Dr. Reddy asserts that Defendants' refusal to pay the Performance Bonus violates the Arizona Wage Act (the "AWA").  AWA defines "wages" as "nondiscretionary compensation due [to] an employee in return for labor or services rendered by an employee for which the employee has a reasonable expectation to be paid whether determined by a time, task, piece, commission or other method of calculation."[163]  The AWA provides that "if an employer … fails to pay wages due

---

[161] Escrow Agreement § 4(b)(i).
[162] *See Dieckman*, 155 A.3d at 367.
[163] A.R.S. § 23-350.7.

34

any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages."[164] However, treble damages should not be awarded if an employer withholds wages because of a "good faith dispute."[165]

The parties dispute (1) whether the SPCA authorizes the withholding of the Performance Bonus and (2) whether Defendants withheld the Performance Bonus in "good faith."

*(1) The SPCA does not authorize the withholding of the Performance Bonus.*

In considering the AWA claim, the Court must first determine whether Dr. Reddy is entitled to receive the Performance Bonus. Defendants argue that, because of their indemnification claims related to the CIDs, they have the unqualified right to withhold the Performance Bonus pursuant to Section 6.7(d) of the SPCA.[166] The Court disagrees.

Section 6.7(d) states that "[s]ubject to the terms of Section 6.7(c), Buyer shall be entitled … to recover *any amounts due from the Seller Parties* under this Agreement by setting off such amounts against the Equity Consideration or the Performance Bonuses … payable pursuant to the Dr. Reddy [Employment

---

[164] A.R.S. § 23-355 (emphasis added).
[165] *Schade v. Diethrich*, 158 Ariz. 1, 11, 760 P.2d 1050, 1060 (1988).
[166] Defs.' Mot. at 21.

35

Agreement]."[167]  The premise of the Buyer's right to set off any amounts against the

Performance Bonuses is that such amounts become "due from the Seller Parties."[168]

This Section is subject to the terms of Section 6.7(c), which states that "Buyer agrees

to first seek indemnification against the Indemnity Escrow Fund. To the extent the

Indemnity Escrow Fund is *insufficient in value to cover the claimed amount*, Buyer

shall have the right to pursue any other remedies to recover any *unpaid claimed*

*amounts*, subject to the limitations set forth in this Agreement."[169]  In other words,

the Buyer's right to reach into the Performance Bonus is provided when (a) there is

a claimed amount and (b) the Indemnity Escrow Funds is insufficient to cover the

claimed amount.[170]  These conditions are not met unless Defendants have requested

specified amounts for indemnification from the Indemnity Escrow Funds or the

Sellers.  As discussed above, Defendants have failed to specify an amount sought for

indemnification.  Hence, Defendants' argument does not find support in the SPCA.

The language in the Separation Agreement also does not support Defendants'

position.  Section 2(c) of the Separation Agreement provides that:

> So long as Employee honors and abides by the terms and conditions of
> this Agreement (including the terms and conditions of Sections 3 and
> 7), on April 24, 2023 Employee shall receive $2,000,000 of the "De
> Novo Location Bonus" pursuant to the Employment Agreement, dated

---

[167] SPCA § 6.7(d).
[168] *Id.*
[169] SPCA § 6.7(c) (emphases added).
[170] *Id.*

April 23, 2021, between the Company and Employee (the "Employment Agreement"), subject to applicable tax withholdings.[171]

Pursuant to Section 2(c), Dr. Reddy's receipt of the Performance Bonus is conditioned solely on his compliance with the terms and conditions of the Agreement and if met, is restricted by applicable tax withholdings.[172] There is nothing in the clear language of this provision that conditions the receipt of the Performance Bonus on any pending claims of indemnification.[173] Thus, the Separation Agreement does not advance Defendants' position.

*(2) Dr. Reddy has sufficiently pleaded a lack of good faith dispute.*

Defendants argue that Dr. Reddy is not entitled to treble damages under the AWA because they withheld the Performance Bonus in a "reasonable, good faith dispute."[174]

When determining whether an employer has a good faith basis to withhold wages under the AWA, courts may consider factors such as "the origin and nature of the dispute, efforts one party or the other made to resolve the dispute short of litigation, the nature of the relationship between the employer and employee, and other contemporaneous acts by either party not bearing directly on the alleged breach of contract."[175]

---

[171] Separation Agreement § 2(c).
[172] *Id.*
[173] *See id.*
[174] Defs.' Mot. at 19–20.
[175] *D'Amico v. Structural I Co.*, 229 Ariz. 262, 266, 274 P.3d 532, 536 (Ct. App. 2012).

Here, Dr. Reddy has satisfied the burden to allege the lack of a "reasonable, good faith dispute."[176] He has alleged that Defendants did not pay the Bonus by the designated date, even though Dr. Reddy has held up his end of the bargain.[177] As discussed above, Defendants' position that Section 6.7(d) of the SPCA authorizes them to withhold the Performance Bonus is not supported by the plain language of the provision. Therefore, based on the Complaint and the contract attached thereto, a factual issue exists as to whether Defendants withheld the Performance Bonus based on a "good faith dispute." Accordingly, Count V survives Defendants' Motion.

**F. Plaintiffs have sufficiently alleged a breach-of-contract claim as to the Performance Bonus (Count VI).**

Plaintiffs assert a breach-of-contract claim to recover the Performance Bonus.[178] Defendants counter that Dr. Reddy has not alleged sufficient facts to establish his compliance with the terms and conditions of the Separation Agreement—a condition precedent for the payment of the Performance Bonus.[179]

To plead a claim for breach of contract, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[180] "Such a statement must only give the defendant fair notice of a claim and is to be

---

[176] *See* Pls.' Opp'n at 18–19.
[177] Am. Compl. ¶¶ 126–129.
[178] Am. Compl. ¶¶ 132–140.
[179] Defs.' Mot. at 21–23.
[180] Ct. Ch. R. 8(a)(1).

liberally construed."[181]  Chancery Court Rule 9(c) provides that, "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."[182]  "Reference to specific conditions precedent is not necessary at the pleadings stage."[183]  The Court only dismisses when the plaintiff may not recover "under any reasonably conceivable set of circumstances susceptible of proof under complaint."[184]

Here, Dr. Reddy has generally pleaded that he satisfied the conditions under the Separation Agreement.[185]  It is not necessary for the allegations to reference the specific conditions precedent by which Dr. Reddy has abided.[186]  The allegations placed Defendants on notice that Plaintiffs seek to prove in later proceedings that all conditions precedent were satisfied, which is sufficient at the dismissal stage.[187]

Defendants argue that the existence of the CIDs demonstrate that Dr. Reddy has not complied with the terms of the SPCA, notably Section 3.20 (Healthcare

---

[181] *VLIW Tech., LLC*, 840 A.2d 606, 611 (Del. 2003).

[182] Ct. Ch. R. 9(c); *see also Eisenmann Corp. v. Gen. Motors Corp.*, 2000 WL 140781, at *18 (Del. Super. Jan. 28, 2000) ("Alleging general occurrence of the conditions precedent, at the pleading stage, is sufficient.").

[183] *In re Cadira Grp. Holdings, LLC Litig.*, 2021 WL 2912479, at *14 (Del. Ch. July 12, 2021).

[184] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[185] Am. Compl. ¶ 127 ("Dr. Reddy has upheld his obligations under the Separation Agreement"); Am. Compl. 137 ("Dr. Reddy has honored and abided by the terms and conditions of the Separation Agreement.").

[186] *See In re Cadira Grp. Holdings, LLC Litig.*, 2021 WL 2912479, at *14 (Del. Ch. July 12, 2021) (holding that allegations stating that "the Company is entitled to a judicial declaration that it has completed all conditions precedent" is sufficient because "reference to specific conditions precedent is not necessary at the pleading stage").

[187] *See In re Cadira Grp. Holdings, LLC Litig.*, 2021 WL 2912479, at *14 (Del. Ch. July 12, 2021).

Compliance).[188]  However, CIDs are issued when there is reason to believe that "any person may be in possession, custody, or control of any documentary material or information relevant to a false claims law investigation."[189]  It may be the case after a trial on the merits that Dr. Reddy is determined to have breached his obligations under Section 3.20.  But the mere existence of the CIDs does not show that Dr. Reddy breached any terms of the SPCA.  Drawing reasonable factual inferences in the non-moving party's favor, the Court finds that Dr. Reddy has satisfied his burden to plead that he has met any conditions precedent.  Hence, the Court will allow Count VI to proceed.

## VI. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED** as to Count I but **DENIED** in all other respects.

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge

---

[188] *See* Defs.' Mot. at 23.
[189] 31 U.S.C. § 3733.